# EXHIBIT A

No. 1-20-0822

---

## IN THE APPELLATE COURT OF ILLINOIS
## FIRST JUDICIAL DISTRICT

---

| | |
|---|---|
| )| |
| )| |
| )| |
| )| |
| LUCILLE MOSBY, Individually, and on )| Appeal from the Circuit Court |
| Behalf of All Others Similarly Situated, )| of Cook County, Illinois |
| )| County Department, |
| Plaintiff-Appellee, )| Chancery Division |
| )| |
| v. )| Case No. 2018-CH-05031 |
| )| |
| THE INGALLS MEMORIAL HOSPITAL, )| The Honorable Judge |
| UCM COMMUNITY HEALTH & )| Pamela McLean Meyerson |
| HOSPITAL DIVISION, INC., and BECTON, )| Judge Presiding |
| DICKINSON AND COMPANY, )| |
| )| |
| Defendants-Appellants. )| |
| )| |
| )| |
| )| |
| )| |

---

## ORDER

---

This matter coming to be heard on Plaintiff-Appellee's Unopposed Motion to Incorporate Proposed Briefing Schedule, the Court being advised in the premises, **IT IS HEREBY ORDERED THAT** Plaintiff-Appellee's Motion is GRANTED and the Court incorporates the following briefing schedule:

1. Plaintiffs-Appellees' combined response brief is due October 8, 2021; and

2. Defendants-Appellants to either file separate or a combined reply brief by November 8, 2021.

6

Dated:_____

_____Nathaniel R. Howse, Jr._____
JUSTICE

ORDER ENTERED

AUG 31 2021

APPELLATE COURT FIRST DISTRICT

_____
JUSTICE

_____
JUSTICE

# EXHIBIT B

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

SHORT RECORD
Appeal No. 20-3202
Filed 11.12.2020

**ORDER**

November 9, 2020

Before

DIANE S. SYKES, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

| No. 20-8029 | IN RE: WHITE CASTLE SYSTEM, INC., Petitioner |
|---|---|
| **Originating Case Information:** | |
| District Court No: 1:19-cv-00382 Northern District of Illinois, Eastern Division District Judge John J. Tharp | |

The following are before the court:

1. **WHITE CASTLE SYSTEM, INC.'S PETITION FOR PERMISSION TO APPEAL ORDER PURSUANT TO 28 U.S.C. § 1292(b)**, filed on October 13, 2020, by counsel for the petitioner.

2. **PLAINTIFF-RESPONDENT'S ANSWER IN OPPOSITION TO DEFENDANT-PETITIONER'S PETITION FOR PERMISSION TO APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**, filed on October 29, 2020, by counsel for the respondents.

**IT IS ORDERED** that the petition for permission to appeal is **GRANTED**. The district court's certification of its order, the petition, and the answer each address a certified question that the petitioner proposed and the district court reframed. But 28 U.S.C. § 1292(b) does not authorize appeal of a particular question; it authorizes appeal of an "order [that] involves a controlling question of law." The appeal is not confined to what either the district court or the parties identified as the "certified question." *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996); *Edwardsville Nat. Bank & Tr. Co. v. Marion Labs., Inc.*, 808 F.2d 648, 650 (7th Cir. 1987).

**IT IS FURTHER ORDERED** that the petitioner shall pay the required docket fees to the clerk of the district court within fourteen days from the entry of this order pursuant to Federal Rule of Appellate Procedure 5(d)(1). Once the district court notifies this court that the fees have been paid, the appeal will be entered on this court's general docket. The district court stated that it intended to stay further proceedings in the case if we were to accept the appeal, and we agree that such a stay is warranted.

# EXHIBIT C

# STATE OF ILLINOIS
## THIRD DISTRICT APPELLATE COURT



**Matthew G. Butler**
Clerk of the Court
815-434-5050

1004 Columbus Street
Ottawa, Illinois 61350
TDD 815-434-5068

July 21, 2020

Matthew Charles Wolfe
Shook, Hardy & Bacon, LLP
111 South Wacker Drive Suite 4700
Chicago, IL 60606

RE:   Marion, Scott v. Ring Container Technologies, LLC
      General No.: 3-20-0184
      County: Kankakee County
      Trial Court No: 19L89

The court has this day, July 21, 2020, entered the following order in the above entitled case:

Appellant's Application for Leave to Appeal, pursuant to Supreme Court Rule 308, Answer of Appellee noted, is ALLOWED.

| | |
|---|---|
| Appellant's Brief Due | 08/25/2020 |
| Appellee's Brief Due | 09/29/2020 |
| Reply Brief Due | 10/13/2020 |

Matthew G. Butler
Clerk of the Appellate Court

c:    Hon. Adrienne W. Albrecht
      David Jonathon Fish
      Erika Anne Dirk
      Kankakee County Circuit Court
      Kimberly Anne Hilton
      Mara Ann Baltabols
      Melissa A. Siebert

# EXHIBIT D

No. _____

## IN THE SUPREME COURT OF ILLINOIS

| | | |
|---|---|---|
| JOROME TIMS; ISAAC WATSON; individually and on behalf of a class of similarly situated persons | ) ) ) ) | On Appeal from the Appellate Court of Illinois, First Judicial District, No. 1-20-0563 |
| *Plaintiffs-Respondents,* | ) ) | |
| vs. | ) ) | There on Appeal from the Circuit Court of Cook County, Illinois, |
| BLACK HORSE CARRIERS, INC. | ) ) | County Department, Chancery Division. No. 2019 CH 3522 |
| *Defendant-Petitioner.* | ) ) | |
| | ) ) ) | The Honorable David B. Atkins Judge Presiding. |

## PETITION FOR LEAVE TO APPEAL

David M. Schultz
John P. Ryan
Adam R. Vaught
Louis J. Manetti, Jr
HINSHAW & CULBERTSON LLP
151 N. Franklin St., Suite 2500
Chicago, Illinois 60606
312-704-3000

*Attorneys for Petitioner,*
Black Horse Carriers, Inc.

E-FILED
10/22/2021 4:53 PM
Carolyn Taft Grosboll
SUPREME COURT CLERK

1018882\309326916.v1

## Prayer for Leave to Appeal

Defendant-Petitioner Black Horse Carriers, Inc., in accordance with Illinois Supreme Court Rule 315(a), prays for leave to appeal from the judgment of the Appellate Court of Illinois, First Judicial District.

## Judgment Below

The Appellate Court's decision was entered on September 17, 2021. (Opinions attached as Appendix at 1) No petition for rehearing was filed.

The issue on appeal to the Appellate Court was a certified question under Supreme Court Rule 308. The question was as follows: whether the limitations periods set forth in 735 ILCS 5/13-201 ("Defamation – Privacy") or 735 ILCS 5/13-205 apply to claims brought under the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* (SR at 286.)

The Appellate Court answered the question by holding "Code section 13-201 governs actions under section 15(c) and (d) of the [Biometric Information Privacy] Act, and section 13-205 governs actions under section 15(a), (b), and (e) of the Act. 740 ILCS 14/15 (West 2018)." (Appendix ¶ 35)

## Points Relied Upon For Review

Lawsuits filed under the Biometric Information Privacy Act ("Act") have increased greatly in the past few years. But as the trial court stated in certifying the question below, "there is no direct authority in Illinois on what statute of limitations properly applies to claims under [the Act], and the issue has arisen in numerous such cases at the trial level, including this one." (SR 285.) The question in this appeal presents a question of statewide importance

because the trial courts are without clear guidance on what statute of limitations to apply to claims under the Act. The circuit court certified the question below asking whether the one-year privacy statute in section 13-201 or the five-year statute in section 13-205 applied. The Appellate Court's answer was, both apply. This Court should grant leave to appeal for the following reason.

1. The Appellate Court below has held that section 13-201 (one-year privacy statute) governs actions under section 15(c) and (d) of the Act while section 13-205 (five-year catch call statute) governs actions under sections 15(a), (b), and (e) of the Act. (Opinion, ¶ 33)

Section 13-201 provides a one-year statute of limitations for actions "for publication of matter violating the right of privacy[.]" 735 ILCS 5/13-201. The court reached this conclusion by finding section 13-201 applies only to claims that have an "element" of publication. The court then read the five section 15 subsections in isolation and determined section 15(a), (b), and (e) do not have elements of publication, therefore section 13-201 does not apply to them. Instead, the court found those subsection are governed by the five-year statute of limitations in section 13-205.

This conclusion fails to recognize the purpose of the Act is to protect against the unauthorized publication of biometric data before it occurs. *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 37. Each subsection of section 15 plays a role in protecting against unauthorized

3

publications. As a result, the Act itself involves publication of a matter involving the right of privacy. The Act name itself is the Biometric Information *Privacy* Act. The mere fact certain actionable duties may not have a publication element does not take away from the fact the purpose of the Act is to avoid publication of private biometric data. The Appellate Court thus erred in determining the entire Act is not governed by section 13-201.

## Statement of Facts

On March 18, 2019, plaintiff Jorome Tims filed a class action complaint against his former employer, defendant Black Horse. (SR 1-22) The complaint asserted claims under BIPA. (*Id.*) BIPA regulates the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g). "Biometric identifier" includes "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10.

Tims' Complaint alleged that Black Horse required its employees to use a timeclock that used finger scans as an authentication method. (*Id.* at 10.) Tims alleges Black Horse's use of the timeclock violated BIPA in various ways. First, he claims that Black Horse failed to maintain a publicly available policy in violation of section 15(a) of the statute. (*Id.* at 16-17.) Second, he alleges Black Horse failed to obtain written release in violation of section 15(b). (*Id.* at 18-19.) Finally, he claims Black Horse disclosed his information to third parties in violation of section 15(d). (*Id.* at 20-21.)

4

In response to Plaintiff's Complaint, Black Horse moved to dismiss the Complaint as barred under the one-year statute of limitations for privacy claims provided by section 5/13-201. (*Id.* at 23-59.) Black Horse argued BIPA is a privacy statute that seeks to protect the unauthorized disclosure of biometric identifiers. (*Id.* at 30.) Therefore, BIPA is governed by the privacy statute of limitations. (*Id.* at 31-35.)

In response, Tims argued that the five-year catchall statute of limitations applied to BIPA. (*Id.* at 63-67.) Tims agreed that "it is undisputed that BIPA is a privacy statute." (*Id.* at 65.) But Tims argued the one-year privacy statute of limitations did not apply because (1) it only applied to privacy claims in which publication was a required element; and (2) BIPA claims do not have a publication element. (*Id.* at 65-67.) Tims asserted that instead of the one-year privacy statute of limitations, the five-year statute of limitations controlled because it is for all "Illinois statutes that do not provide a specific limitations period." (*Id.* at 64.)

In reply, Black Horse explained that it was undisputed that a BIPA violation is a privacy injury, so the law requires the privacy statute of limitations to govern BIPA claims. Black Horse stressed that section 5/13-201 applied to privacy claims more generally that involved publication, and not merely claims where publication is an element of the claim. (*Id.* at 101-08.) It further argued that there was no authority for the claim that publication must be an element of a privacy claim for section 5/13-201 to apply. (*Id.* at 103-08.)

1018882\309326916.v1

Black Horse also showed how there was no question that BIPA was a privacy statute that involved publication.

On September 23, 2019, the Circuit Court denied Black Horse's motion to dismiss. (*Id.* at 168-70.) It held that the privacy statute of limitations in 5/13-201 did not apply because "this action is premised on Plaintiff's claims that Defendant violated BIPA; not that Defendant has generally invaded Plaintiff's privacy or defamed him." (*Id.* at 169.) It further held that the five year statute of limitations applied by "default" because BIPA "does not provide an explicitly stated statute of limitations." (*Id.* at 170.)

On December 17, 2019, Black Horse filed a motion to reconsider the order denying its motion to dismiss or, in the alternative, for appellate certification under Illinois Supreme Court Rule 308. (*Id.* at 225-40.) It argued that the court erred in its holding that the privacy statute of limitations did not apply to BIPA because, under settled Illinois Supreme Court precedent, the type of injury determines the statute of limitations—and the type of injury with a BIPA violation is unquestionably a privacy injury. (*Id.* at 227-30.) It also argued section 5/13-201 applies to all privacy claims that involve publication, and BIPA involves publication. (*Id.* at 230-33.)

Alternatively, Black Horse argued that the court should certify the statute of limitations issue under Rule 308 because the conditions were met and this Court could offer useful guidance on the issue, particularly with the proliferation of BIPA trial-level cases. (*Id.* at 233-36.) On February 26, 2020,

6

the circuit court entered an order denying the motion to reconsider, but certifying a Rule 308 question. (*Id.* at 285-86.)

On appeal, the Appellate Court held that section 13-201 governs actions under section 15(c) and (d) of the Act, but section 13-205 governs actions under section 15(a), (b), and (e) of the Act. It started its analysis with the following statement.

> Here, we find from the language of section 13-201 including actions "for publication of matter violating the right of privacy" (735 ILCS 5/13-201 (West 2018)) and from our decision in *Benitez* [*v. KFC National Management Co.*, 305 Ill. App. 3d 1027 (2nd Dist. 1999) that section 13-201 does not encompass all privacy actions but only those where publication is an element or inherent part of the action. Had the legislature intended to include all privacy actions, it would have written something like "actions for slander, libel, or privacy" or "actions for slander, libel or violations of the right of privacy." Similarly, had the legislature intended to include any privacy action that merely concerns or pertains to publication, it would have used such broad language rather the narrower "for publication." Logically, an action for something has that thing as a necessary part or element of the action.

(Opinion, ¶ 29)

From there, the court found three sections did not have an element of publication or dissemination. "A private party would violate section 15(a) by failing to develop a written policy establishing a retention schedule and destruction guidelines, section 15(b) by collecting or obtaining biometric data without written notice and release, or section 15(e) by not taking reasonable care in storing, transmitting, and protecting biometric data." (*Id.* ¶ 31) The court concludes, "an action under section 15(a), (b), or (e) of the Act is not an action "for publication of matter violating the right of privacy." (*Id.*)

7

Conversely, the court found that publication or disclosure of biometric data is an element of claims under section 15(c) and (d). The court section 15(c) "forbids a private party to sell, lease, trade, or otherwise profit from" biometric data (id. § 15(c)), which entails a publication, conveyance, or dissemination of such data. In other words, an action under section 15(c) or (d) is an action for publication of matter violating the right of privacy." (*Id.* ¶ 32) Additionally, section 15(d) is violated by disclosing or otherwise disseminating such data absent specified prerequisites such as consent or a court order. (*Id.*)

The court then concluded "[w]e therefore find that section 13-201 governs actions under section 15(c) and (d) of the Act while section 13-205 governs actions under sections 15(a), (b), and (e) of the Act. As we are answering the certified question based on the relevant statutory language, which is not ambiguous, we need not resort to, and shall not address, aids of construction such as legislative history." (Opinion, ¶ 33)

## Argument

The certified question before the Appellate Court was "whether the limitations periods set forth in 735 ILCS 5/13-201 ("Defamation—Privacy") or 735 ILCS 5/13-205 apply to claims brought under the Biometric Information Privacy Act, 740 ILCS 14/1," The Appellate Court answered the question by holding both apply. Specifically, it held "section 13-201 governs actions under section 15(c) and (d) of the Act, and section 13-205 governs actions under section 15(a), (b), and (e) of the Act." (Opinion, ¶ 35)

8

The subsections of Section 15 of the Act impose on private entities possessing biometric identifiers or information the following duties: (a) "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first"; (b) inform a person in writing that biometric identifiers or information are being collected or stored, the purpose therefor, and the period it will be stored or used, and obtain written release; (c) not "sell, lease, trade, or otherwise profit from" a person's biometric identifier or information; (d) not "disclose, redisclose, or otherwise disseminate" a person's biometric identifier or information without consent, request, or authorization of the subject, a legal requirement of disclosure, or a court order; and (e) "store, transmit, and protect from disclosure all biometric identifiers and *** information using the reasonable standard of care" and "in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15.

To enforce these duties, "[a]ny person aggrieved by a violation of this Act shall have a right of action" and "may recover for each violation" (1) $1000 liquidated damages or actual damages, whichever is greater, for negligent violations; (2) $5000 liquidated damages or actual damages, whichever is

9

greater, for intentional or reckless violations; (3) reasonable attorney fees and costs; and (4) other relief including injunctions. 740 ILCS 14/20.

This Court has stated "[t]he duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right." *Rosenbach*, 2019 IL 123186, ¶ 33. "The strategy adopted by the General Assembly through enactment of the Act is to try to head off such problems before they occur." *Id.* ¶ 36. It does this "by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected to begin with, before they are or can be compromised." *Id.* "When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." *Id.* ¶ 34 (internal citations omitted).

In reaching its conclusion, however, the Appellate Court did not look at the mandatory procedures in context of the whole Act. Instead, the court looked at subsection (a), (b), (c), (d), and (e) as separate, distinct causes of action. Then, in analyzing whether the privacy statute of limitations applies, it stated "that section 13-201 does not encompass all privacy actions but *only those where*

1018882\309326916.v1

*publication is an element or inherent part of the action.*" (Opinion, ¶ 29

(emphasis added))

It analyzed as follows:

> While all these duties concern privacy, at least three of them
> have absolutely no element of publication or dissemination. A
> private party would violate section 15(a) by failing to develop a
> written policy establishing a retention schedule and destruction
> guidelines, section 15(b) by collecting or obtaining biometric
> data without written notice and release, or section 15(e) by not
> taking reasonable care in storing, transmitting, and protecting
> biometric data. Id. § 15(a), (b), (e). A plaintiff could therefore
> bring an action under the Act alleging violations of section 15(a),
> (b), and/or (e) without having to allege or prove that the
> defendant private entity published or disclosed any biometric
> data to any person or entity beyond or outside itself. Stated
> another way, an action under section 15(a), (b), or (e) of the Act
> is not an action "for publication of matter violating the right of
> privacy." 735 ILCS 5/13-201 (West 2018).

> Conversely, publication or disclosure of biometric data is clearly
> an element of an action under section 15(d) of the Act, which is
> violated by disclosing or otherwise disseminating such data
> absent specified prerequisites such as consent or a court order.
> 740 ILCS 14/15(d) (West 2018). Section 15(c) similarly forbids a
> private party to "sell, lease, trade, or otherwise profit from"
> biometric data (id. § 15(c)), which entails a publication,
> conveyance, or dissemination of such data. In other words, an
> action under section 15(c) or (d) is an action "for publication of
> matter violating the right of privacy."

(Opinion, ¶¶ 31, 32)

The Appellate Court's determination that publication must be an

element relied on *Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1034

(2d Dist. 1998). *Benitez* considered whether claims for invasion of privacy based

on the defendants secretly viewing plaintiffs in the bathroom were governed

by Section 5/13-201. The Court determined the plaintiffs' claims were best

11

1018882\309326916.v1

categorized as stating a claim for "intrusion upon the seclusion of another." *Id.* at 1033. The court noted the core of the tort of intrusion upon seclusion "is the offensive prying into the private domain of another." *Id.* Examples included "invading someone's home, illegally searching someone's shopping bag in a store, eavesdropping by wiretapping, peering into the windows of a private home, or making persistent and unwanted telephone calls." *Id.* In determining the proper statute of limitations to apply, the court found "the plain language of section 13-201 indicates that the one-year statute of limitations governs only libel, slander and privacy torts involving publication." *Id.* Because the tort of intrusion upon seclusion does not have anything to do with publication of private information, the court found section 13-201 did not apply.

*Benitez* acknowledged a conflict in its holding with *Juarez v. Ameritech Mobile Comm., Inc.*, 746 F. Supp. 798, 806 (N.D. Ill. 1990) (holding that alleged claims for invasion of privacy must be brought within one year), *aff'd*, 957 F.2d 317 (7th Cir. 1992); *see also Hrubec v. Nat'l R.R. Passenger Corp.*, 778 F. Supp. 1431, 1435 (N.D. Ill. 1991), *reversed on other grounds*, 981 F.2d 962 (7th Cir. 1992). *Juarez* and *Hrubec* both held that Section 13-201 should not be read so narrowly to exclude privacy claims for intrusion upon seclusion. *Id. Juarez* and *Hrubec* instead relied on the historical application of Section 13-201 to all privacy claims.

Regardless, the Appellate Court overread *Benitez* to hold publication must be an element of each subsection of the Act for section 13-201 to apply. *Benitez* never expressly limits the scope of section 13-201 to only privacy claims which require publication as an element. Instead, Benitez said, "[t]he fact that publication is not an element of intrusion upon seclusion is crucial, since the plain language of section 13--201 indicates that the one-year statute of limitations governs only libel, slander and privacy torts involving publication (see 735 ILCS 5/13--201 (West 1994))." *Benitez,* 305 Ill. App. 3d at 1034. The reference to "an element" was simply an acknowledgement that intrusion upon seclusion has nothing to do with the publication of private information. As *Benitez* then said, 13-201 governs "privacy torts *involving publication.*" *Id*. (emphasis added).

As a result, section 13-201 should govern the Act because the entire Act is designed as a privacy claim to prevent the unauthorized publication of biometric data. It is, therefore, a cause of action involving publication. The mere fact certain actionable duties may not have a specific publication element does not take away from the fact the purpose of the Act is to avoid the unauthorized publication of biometric data. For example, this Court in *Rosenbach* said "[t]he strategy adopted by the General Assembly through enactment of the Act is to try to head off such problems before they occur." *Rosenbach,* 2019 IL 123186, ¶ 36. Likewise, the Appellate Court has held the

13

entire purpose of the Act is "to prevent an unauthorized disclosure[.]" *Sekura v. Krishna Schaumburg Tan, Inc.,* 2018 IL App (1st) 180175, ¶70.

Furthermore, the plain language of the Act and its legislative history eliminate any doubt that the Act is a privacy claim involving publication. *Sekura* stated that "[w]hen interpreting a statute, we do not read a portion of it in isolation; instead we read it in its entirety, keeping in mind the subject it addresses and the drafters' apparent objective in enacting it." *Sekura,* 2018 IL App (1st) 180175 ¶42. The Appellate Court, however, analyzed each subsection of Section 15 in isolation. Such an interpretation conflicts with the drafters' objective. *Id.* at ¶42.

It is in this context that the Court should grant leave to appeal to analyze whether sections 15(a), (b), and (e) involve publication alone those section are part of the strategy of the Act to prevent an "unauthorized disclosure." *Sekura,* 2018 IL App (1st) 180175 ¶70. For example, section 15(a) states that an entity needs to enact a policy for retention or destruction of biometric data or the entity must destroy the data within 3 years of their last interaction. The purpose behind section 15(a) is to protect the biometric data from being disclosed to a third-party, because without a retention or destruction policy, the data could be disseminated. Similarly, section 15(b) discusses the need to obtain a written release. The written release allows a person to know where their biometric data will go, which allows a person to determine if they want their data to be disseminated. And section 15(e)

requires taking reasonable care in storing, transmitting, and protecting biometric data which too is aimed to prevent unauthorize dissemination of biometric data. Section 15(e) states in part that a private entity needs to "protect from disclosure all biometric identifiers and biometric information[.]" 740 ILCS 14/15. As a result, the plain language and purpose of the Act establish that, unlike intrusion upon seclusion, it is a cause of action premised on protecting against the unauthorized publication of private data.

Though the language of the Act is clear that its purpose is to prevent unauthorized publication of biometric data, its legislative history also provides further proof that the privacy statute of limitations should apply. The *Sekura* court reviewed the legislative history behind the Act and found Senator Ryg identified its primary impetus. *Sekura*, 2018 IL App (1st) 180175¶63. A company known as Pay By Touch had assets that contained biometric information, it went into bankruptcy and the court approved the sale of it, which sale included this information. *Id*. Thereafter, the Illinois legislature sought to address the valid concerns of what would happen to the biometric data of thousands of Illinois citizens. *Id*. The concern was that biometric data would be disclosed to the wrong person and end up in the wrong hands. Thus, the legislature sought "to protect against unauthorized disclosure." *Id*. at ¶70.

A statute that shares similar goals on related subjects as the Act is the Illinois Right of Publicity Act ("IRPA"), 765 ILCS 1075/1 *et seq*. Neither the Act nor IRPA have an expressed statute of limitations. Neither require publication

15

to the masses to state a claim. Both the Act and IRPA expand on the common law right for an invasion of privacy. They also both allow for actual damages or statutory damages. Both statutes also allow for the recovery of attorneys' fees and costs. And in *Blair v. Nevada Landing Partnership*, 369 Ill. App. 3d 318, 323 (2nd Dist. 2006), the court applied the one-year statute of limitations to an alleged violation of IPRA.

The application of the privacy statute of limitations to IPRA at the time the Act had been enacted provides further evidence that the privacy statute of limitations must apply here. A Court "must presume" that several statutes relating to the similar subjects are governed by one spirit and that the legislature intended the statutes to be interpreted harmoniously. *Uldrych v. VHS of Ill., Inc.*, 239 Ill.2d 532, 540 (2011); *Evanston v. Riseborough*, 2014 IL 114271, ¶ 24.

*Blair* established that the privacy statute of limitations applied to IRPA in December of 2006. *Blair*, 369 Ill. App. 3d at 323. IRPA supplanted the "common law right of publicity," but it did not supplant "any other rights provided by the law including but not limited to the common law right of privacy." 765 ILCS 1075/60. Thereafter, the legislature passed the Act in May of 2008 – 1 1/2 years after *Blair* was decided.

Over a decade later, Senator Ryg and several other sponsors of the Act

16

1018882\309326916.v1

confirmed that the legislature passed the Act in the same spirit as IRPA.[1] Senator Ryg and several other sponsors submitted an amicus brief in *Rosenbach*. *Id.* The legislators' amicus brief compared the Act to IRPA. *Id.* They explained in their amicus brief how the Act and IRPA share similar goals on related subjects. As a result, the same one-year privacy statute of limitations that applies to IRPA must apply to Act.

Regardless the proper interpretation of the Act and the statute of limitations that applies, however, this Court should grant leave to appeal to decide the issue and provide uniformity to claims brought under the Act.

## Conclusion

WHEREFORE, Defendant Black Horse Carriers, Inc. respectfully requests this Court allow its petition for leave to appeal.

/s/ Adam R Vaught
David M. Schultz
John P. Ryan
Adam R. Vaught
Louis J. Manetti, Jr.
Hinshaw & Culbertson LLP
151 N. Franklin St., Suite 2500
Chicago, Illinois 60606
312-704-3000
dschultz@hinshawlaw.com
jryan@hinshawlaw.com
avaught@hinshawlaw.com
lmanetti@hinshawlaw.com
*Attorneys for Applicant,*
*Black Horse Carriers, Inc.*

---

[1] Brief Amicus Curiae, available at http://illinoiscourts.gov/SupremeCourt/SpecialMatters/2018/123186_MOT3.pdf (last accessed October 20, 2021).

17

## CERTIFICATION

I certify that this application conforms to the requirements of Rule 341(a) and (b) and Rule 367. The length of this petition, excluding the pages containing the Rule 341(d) cover, the Rule 341(c) certificate of compliance, the certificate of service is 4,014 words.

/s/ Adam R. Vaught

Adam R. Vaught
Hinshaw & Culbertson LLP
151 N. Franklin St., Suite 2500
Chicago, Illinois 60606
312-704-3000
avaught@hinshawlaw.com

1018882\309326916.v1

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that he is electronically filed via Odyssey eFileIL the Petitioner's Petition for Leave to Appeal with the Clerk of the Supreme Court of Illinois, on the 22nd day of October, 2021.

In addition, the undersigned certifies that the foregoing Petitioner's Petition for Leave to Appeal is being serving on counsel of record by sending a copy thereof via email on the 22nd day of October, 2021, before 5:00 p.m. to counsel of record listed below.

> Ryan F. Stephan
> James B. Zouras
> Catherine T. Mitchell
> STEPHAN ZOURAS, LLP
> 100 North Riverside Plaza - Suite 2150
> Chicago, IL 60606
> rstephan@stephanzouras.com
> jzouras@stephanzouras.com
> cmitchell@stephanzouras.com

Under penalties as provided by law pursuant to § 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct.

By:    /s/ Adam R. Vaught

E-FILED
10/22/2021 4:53 PM
Carolyn Taft Grosboll
SUPREME COURT CLERK

1018882\309326916.v1

# APPENDIX

E-FILED
10/22/2021 4:53 PM
Carolyn Taft Grosboll
SUPREME COURT CLERK

20

1018882\309326916.v1

## TABLE OF CONTENTS TO THE APPENDIX

Appellate Court Opinion filed on September 17, 2021.........................A1

21

2021 IL App (1st) 200563

FIRST DISTRICT
SIXTH DIVISION
September 17, 2021

No. 1-20-0563

| | | |
|---|---|---|
| JOROME TIMS and ISAAC WATSON, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 19 CH 3522 |
| BLACK HORSE CARRIERS, INC., | ) ) | Honorable David B. Atkins, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Mikva and Justice Oden Johnson concurred in the judgment and opinion.

## OPINION

¶ 1     This case concerns a class action brought by plaintiffs Jorome Tims and Isaac Watson against defendant Black Horse Carriers, Inc., under the Biometric Information Privacy Act (Act). 740 ILCS 14/1 *et seq* (West 2018). Defendant brings this interlocutory appeal from circuit court orders denying its motion to dismiss on limitation grounds, denying reconsideration of the same, and certifying a question to this court: whether the limitation period in section 13-201 or section 13-205 of the Code of Civil Procedure (Code) applies to claims under the Act. 735 ILCS 5/13-201, 13-205 (West 2018). On appeal, defendant contends that the one-year limitation period under section 13-201 governs claims under the Act, while plaintiffs contend that the five-year period in section 13-205 governs. As explained below, we answer the certified question as follows: section 13-201 governs actions under section 15(c) and (d) of the Act, and section 13-205 governs actions under section 15(a), (b), and (e) of the Act. 740 ILCS 14/15 (West 2018).

A1

¶ 2                                    I. JURISDICTION

¶ 3       Plaintiffs filed and amended their complaint in 2019 and the trial court denied defendant's

motion to dismiss in September 2019. The court denied reconsideration and certified the aforesaid

question to this court on February 26, 2020. Defendant applied to this court for leave to appeal on

March 27, 2020, which we granted on April 23, 2020. Thus, we have jurisdiction pursuant to article

VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court

Rule 308 (eff. Oct. 1, 2019), governing interlocutory appeals upon certified questions of law.

¶ 4                                    II. BACKGROUND

¶ 5       Plaintiff Tims filed his class action complaint in March 2019, raising claims under section

15 of the Act. 740 ILCS 14/15 (West 2018). The complaint alleged that Tims worked for defendant

from June 2017 until January 2018. It alleged that defendant scanned and was still scanning the

fingerprints of all employees, including plaintiff, and was using and had used fingerprint scanning

in its employee timekeeping. "Defendant continues to collect, store, use, and disseminate

individual[s'] biometric data in violation of the" Act.

¶ 6       All counts alleged that defendant had violated and was violating the Act by not (a) properly

informing plaintiff and other employees of the purpose and length of defendant's storage and use

of their fingerprints; (b) receiving a written release from plaintiff and other employees to collect,

store, and use their fingerprints; (c) providing a retention schedule and guidelines for destroying

the fingerprints of plaintiff and other employees; or (d) obtaining consent from plaintiff and other

employees to disclose or disseminate their fingerprints to third parties.

¶ 7       The first count alleged that defendant violated section 15(a) by failing to institute, maintain,

and adhere to a retention schedule for biometric data. The second count alleged that it violated

section 15(b) by failing to obtain informed written consent and release before obtaining biometric

data. The third count alleged that it violated section 15(d) by disclosing or disseminating biometric

data without first obtaining consent. Each count sought a declaratory judgment, injunctive relief, statutory damages for each violation of the Act, and attorney fees and costs.

¶ 8       Defendant appeared and, in June 2019, filed a motion to dismiss under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)), alleging that the complaint was filed outside the limitation period. The motion noted that the Act itself has no limitation provision and argued that the one-year limitation period for privacy actions under Code section 13-201 applies to causes of action under the Act because the Act's purpose is privacy protection.

¶ 9       Plaintiff Tims responded to the motion to dismiss, arguing that the Act's purpose is to create a prophylactic regulatory system to prevent or deter security breaches regarding biometric data. Plaintiff argued that, in the absence of a limitation period in the Act, the 5-year period in section 13-205 for all civil actions not otherwise provided for should apply to the Act. Plaintiff argued that the one-year period in section 13-201 does not govern all privacy claims but only those privacy claims with a publication element, while the Act does not have a publication element. Plaintiff noted that defendant's motion did not claim destruction or deletion of plaintiff's biometric information so that the alleged violations of the Act regarding plaintiff were ongoing or continuing.

¶ 10      Defendant replied in support of its motion to dismiss, arguing that a privacy claim involving publication as provided in section 13-201 need not require publication as an element. Defendant argued that publication for purposes of section 13-201 consists of disclosure to any third party and that the Act involves publication because it prevents the disclosure or publication of biometric information. Defendant argued that adopting plaintiff's argument would entail applying section 13-201 to the provisions in the Act requiring publication and section 13-205 to the provisions that did not require publication. Lastly, defendant argued that there was no ongoing violation because the alleged violation occurred when plaintiff's fingerprints were initially scanned

for defendant's timekeeping system without his written release and the subsequent fingerprint scannings as he clocked into and out of work were merely continuing ill effects from that violation.

¶ 11    In September 2019, the trial court denied defendant's motion to dismiss. Noting that plaintiff Tims was claiming that defendant violated the Act, rather than claiming a general invasion of his privacy or defamation, the court found section 13-201 inapplicable and instead applied the catchall limitation provision in section 13-205 to the Act, which did not have its own limitation period. The complaint was therefore timely, as it was filed within five years of plaintiff's claim accruing, whether that was at the beginning or the end of his employment by defendant.

¶ 12    Later in September 2019, the complaint was amended to add Isaac Watson as a plaintiff, alleging that Watson was employed by defendant from December 2017 until December 2018.

¶ 13    In December 2019, defendant moved for reconsideration of the denial of its motion to dismiss, reiterating its argument that section 13-201 applies to the Act because both statutes concern the right to privacy. The motion also asked the court to certify to this court the question of which limitation period applies to the Act. Plaintiffs responded, arguing that reconsideration and certification were unnecessary, as the denial of the motion to dismiss was not erroneous.

¶ 14    On February 26, 2020, the trial court denied reconsideration but certified the question of whether the limitation period in section 13-201 or section 13-205 applies to claims under the Act.

¶ 15                                    III. ANALYSIS

¶ 16    The trial court has certified to this court the question of whether the one-year limitation period in section 13-201 or the five-year limitation period in section 13-205 governs claims under the Act. Defendant and *amicus* the Illinois Chamber of Commerce contend that the Act concerns privacy and section 13-201 governs privacy actions. Plaintiffs contend that section 13-201 governs privacy actions only where publication is an element and that publication is not an element of actions under the Act, so that the default limitation period of section 13-205 should apply.

¶ 17    An appeal pursuant to Rule 308 on certified questions presents a question of law subject to *de novo* review. *Sharpe v. Westmoreland*, 2020 IL 124863, ¶ 6.

¶ 18                                A. Limitation Statutes

¶ 19    The applicability of a statute of limitation to a cause of action presents a legal question subject to *de novo* review, and the sole concern in determining which limitation period applies is ascertaining and effectuating the legislature's intent. *Uldrych v. VHS of Illinois, Inc.*, 239 Ill. 2d 532, 540 (2011). In ascertaining legislative intent, that intent is best determined from the plain and ordinary meaning of the statutory language. *Sharpe*, 2020 IL 124863, ¶ 10. If the language is plain and unambiguous, we shall not read into the statute exceptions, limitations, or conditions the legislature did not express. *Id.* ¶ 14. Similarly, when legislative intent can be ascertained from the statutory language, it must be effectuated without resorting to aids for construction such as legislative history. *Id.* ¶ 13.

¶ 20    Section 13-201 establishes a one-year limitation period for "[a]ctions for slander, libel or for publication of matter violating the right of privacy." 735 ILCS 5/13-201 (West 2018). Under the common law, publication means communication to both a single party and the public at large. *West Bend Mutual Insurance Co. v. Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, ¶ 42.

¶ 21    Courts have recognized two types of privacy interests in the right to privacy: secrecy ("the right to keep certain information confidential") and seclusion ("the right to be left alone and protecting a person from another's prying into their physical boundaries or affairs"). *Id.* ¶ 45. The "core of the tort of intrusion upon seclusion is the offensive prying into the private domain of another" rather than publication. *Benitez v. KFC National Management Co.*, 305 Ill. App. 3d 1027, 1033 (1999). Thus, section 13-201 does not apply to intrusion upon seclusion. *Id.* at 1034. Conversely, section 13-201 applies to public disclosure of private facts, appropriation of the name or likeness of another, and false-light publicity. *Id.*

A5

"Publication is an element of each of the three former torts, whereas publication is not an element of unreasonable intrusion upon the seclusion of another. [Citation.] The fact that publication is not an element of intrusion upon seclusion is crucial, since the plain language of section 13-201 indicates that the one-year statute of limitations governs only libel, slander and privacy torts involving publication [citations]." *Id.*

¶ 22    Section 13-205 provides for a five-year limitation period for, in relevant part, "all civil actions not otherwise provided for." 735 ILCS 5/13-205 (West 2018).

¶ 23                                    B. The Act

¶ 24    The Act includes findings that "[b]iometrics *** are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft" and that "public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(c), (g) (West 2018). As our supreme court has stated, the Act:

"imposes numerous restrictions on how private entities collect, retain, disclose, and destroy biometric identifiers, including retina or iris scans, fingerprints, voiceprints, scans of hand or face geometry, or biometric information. Under the Act, any person 'aggrieved' by a violation of its provisions 'shall have a right of action *** against an offending party' and 'may recover for each violation' the greater of liquidated damages or actual damages, reasonable attorney fees and costs, and any other relief, including an injunction, that the court deems appropriate." *Rosenbach v. Six Flags Entertainment Corp.*, 2019 IL 123186, ¶ 1 (quoting 740 ILCS 14/20 (West 2016)).

¶ 25    The Act works "by imposing safeguards to insure that individuals' and customers' privacy rights in their biometric identifiers and biometric information are properly honored and protected" and by "subjecting private entities who fail to follow the statute's requirements to substantial

potential liability, including liquidated damages, injunctions, attorney fees, and litigation expenses 'for each violation' of the law [citation] whether or not actual damages, beyond violation of the law's provisions, can be shown." *Id.* ¶ 36 (quoting 740 ILCS 14/20 (West 2016)). When a private entity violates the Act, " 'the right of the individual to maintain [his or] her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized.' " *Id.* ¶ 34 (quoting *Patel v. Facebook Inc.*, 290 F. Supp. 3d 948, 954 (N.D. Cal. 2018)).

> "Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. [Citation.] The duties imposed on private entities by section 15 of the Act [citation] regarding the collection, retention, disclosure, and destruction of a person's or customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach." *Id.* ¶ 33 (citing 740 ILCS 14/15 (West 2016)).

¶ 26    In particular, the Act imposes on private entities possessing biometric identifiers or information duties to (a) "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first"; (b) inform a person in writing that biometric identifiers or information are being collected or stored, the purpose therefor, and the period it will be stored or used, and obtain written release; (c) not "sell, lease, trade, or otherwise profit from" a person's biometric identifier or information; (d) not "disclose, redisclose, or otherwise disseminate" a person's biometric identifier

or information without consent, request, or authorization of the subject, a legal requirement of disclosure, or a court order; and (e) "store, transmit, and protect from disclosure all biometric identifiers and *** information using the reasonable standard of care" and "in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information." 740 ILCS 14/15 (West 2018). The Act thus protects a privacy right of secrecy, "the right of an individual to keep his or her personal identifying information like fingerprints secret." *West Bend Mutual Insurance Co.*, 2021 IL 125978, ¶ 46.

¶ 27    To enforce these duties, "[a]ny person aggrieved by a violation of this Act shall have a right of action" and "may recover for each violation" (1) $1000 liquidated damages or actual damages, whichever is greater, for negligent violations; (2) $5000 liquidated damages or actual damages, whichever is greater, for intentional or reckless violations; (3) reasonable attorney fees and costs; and (4) other relief including injunctions. 740 ILCS 14/20 (West 2018). A person aggrieved by a violation of the Act need not allege or show "actual injury or adverse effect, beyond violation of his or her rights under the Act." *Rosenbach*, 2019 IL 123186, ¶ 40.

¶ 28                                C. Analysis

¶ 29    Here, we find from the language of section 13-201 including actions "for publication of matter violating the right of privacy" (735 ILCS 5/13-201 (West 2018)) and from our decision in *Benitez* that section 13-201 does not encompass all privacy actions but only those where publication is an element or inherent part of the action. Had the legislature intended to include all privacy actions, it would have written something like "actions for slander, libel, or privacy" or "actions for slander, libel or violations of the right of privacy." Similarly, had the legislature intended to include any privacy action that merely concerns or pertains to publication, it would have used such broad language rather the narrower "for publication." Logically, an action *for* something has that thing as a necessary part or element of the action.

¶ 30    Turning to the Act, section 15 imposes various duties upon which an aggrieved person may bring an action under section 20. Though all relate to protecting biometric data, each duty is separate and distinct. A private entity could violate one of the duties while adhering to the others, and an aggrieved person would have a cause of action for violation of that duty. Moreover, as section 20 provides that a "prevailing party may recover for each violation" (740 ILCS 14/20 (West 2018)), a plaintiff who alleges and eventually proves violation of multiple duties could collect multiple recoveries of liquidated damages. *Id.* § 20(1), (2).

¶ 31    While all these duties concern privacy, at least three of them have absolutely no element of publication or dissemination. A private party would violate section 15(a) by failing to develop a written policy establishing a retention schedule and destruction guidelines, section 15(b) by collecting or obtaining biometric data without written notice and release, or section 15(e) by not taking reasonable care in storing, transmitting, and protecting biometric data. *Id.* § 15(a), (b), (e). A plaintiff could therefore bring an action under the Act alleging violations of section 15(a), (b), and/or (e) without having to allege or prove that the defendant private entity published or disclosed any biometric data to any person or entity beyond or outside itself. Stated another way, an action under section 15(a), (b), or (e) of the Act is not an action "for publication of matter violating the right of privacy." 735 ILCS 5/13-201 (West 2018).

¶ 32    Conversely, publication or disclosure of biometric data is clearly an element of an action under section 15(d) of the Act, which is violated by disclosing or otherwise disseminating such data absent specified prerequisites such as consent or a court order. 740 ILCS 14/15(d) (West 2018). Section 15(c) similarly forbids a private party to "sell, lease, trade, or otherwise profit from" biometric data (*id.* § 15(c)), which entails a publication, conveyance, or dissemination of such data. In other words, an action under section 15(c) or (d) *is* an action "for publication of matter violating the right of privacy." 735 ILCS 5/13-201 (West 2018).

A9

¶ 33    We therefore find that section 13-201 governs actions under section 15(c) and (d) of the Act while section 13-205 governs actions under sections 15(a), (b), and (e) of the Act. As we are answering the certified question based on the relevant statutory language, which is not ambiguous, we need not resort to, and shall not address, aids of construction such as legislative history.

¶ 34                                IV. CONCLUSION

¶ 35    Accordingly, we answer the certified question: Code section 13-201 governs actions under section 15(c) and (d) of the Act, and section 13-205 governs actions under section 15(a), (b), and (e) of the Act. 740 ILCS 14/15 (West 2018). We remand this cause to the circuit court for further proceedings consistent with this opinion.

¶ 36    Certified question answered; cause remanded.

No. 1-20-0563

## No. 1-20-0563

| | |
|---|---|
| **Cite as:** | *Tims v. Black Horse Carriers, Inc.*, 2021 IL App (1st) 200563 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-3522; the Hon. David B. Atkins, Judge, presiding. |
| **Attorneys for Appellant:** | David M. Schultz, John P. Ryan, Adam R. Vaught, and Louis J. Manetti Jr., of Hinshaw & Culbertson LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Ryan F. Stephan, James B. Zouras, and Catherine T. Mitchell, of Stephan Zouras, LLP, of Chicago, for appellees. |
| ***Amicus Curiae*:** | Melissa A. Siebert and Matthew C. Wolfe, of Shook, Hardy & Bacon LLP, of Chicago, for *amicus curiae* Illinois Chamber of Commerce. |

# EXHIBIT E

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

ANGELA R. WEBSTER, individually,          )
and on behalf of all others similarly situated,   )
                                          )
            Plaintiff,                    )
                                          )      Case No. 2019-CH-11441
    v.                                    )
                                          )      Judge Michael T. Mullen
WINDSOR ESTATES NURSING AND               )
REHAB CENTRE, LLC,                        )
                                          )
            Defendant.                    )

## AGREED ORDER

This matter coming before the Court by agreement of the parties, the Court being fully advised, it is hereby ordered that:

1. This matter remains stayed pending the decision of the Illinois Supreme Court in the matter of *McDonald v. Symphony Bronzeville, LLC*, No. 126511 and the First District Appellate Court in *Mosby v. Ingalls Memorial Hospital*, No. 1-20-0822.

2. The status hearing set for August 25, 2021, at 9:30 am is hereby stricken.

3. This matter is set for status on November 22, 2021 at 9:30 am.

Prepared by:                              ENTERED:
Megan E. Shannon
Stephan Zouras, LLP
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
312.233.1550
Attorneys for Plaintiff                   Hon. Michael T. Mullen

Judge Michael T. Mullen
AUG 23 2021
Circuit Court - 2084

1

# EXHIBIT F

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

### CHANCERY DIVISION

KELSEY HIRMER, individually and on
behalf of himself all others similarly
situated,

     *Plaintiff,*

     v.

ELITE MEDICAL TRANSPORTATION,
LLC d/b/a ELITE AMBULANCE,

     *Defendant.*

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2020 CH 04069

Hon. Pamela McLean Meyerson

Presiding Judge

### ORDER

This cause coming to be heard on status, it is HEREBY ORDERED:

1) This matter remains stayed pending a decision by the First District Appellate Court
in *Mosby v. Ingalls Memorial Hospital*, No. 1-20-0822 and a decision by the Illinois
Supreme Court in *McDonald v. Symphony Bronzeville Park, LLC*, No. 126511 (Ill.).

2) This matter is set for status on November 15, 2021 at 10:15 a.m., to be conducted
via Zoom.

Judge Pamela McLean Meyerson

AUG 1 7 2021

Hon. Pamela McLean Meyerson
**Circuit Court – 2097**

# EXHIBIT G

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3
### Eastern Division

Elia Ibarra

                              Plaintiff,

v.                                          Case No.: 1:20–cv–07015
                                            Honorable Jorge L. Alonso

Prospera, LLC, et al.

                              Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, July 19, 2021:

      MINUTE entry before the Honorable Jorge L. Alonso: Telephonic motion hearing held. For the reasons stated on the record, Defendant Prospera, LLC's motion to reinstate stay [55] is granted. Discovery is stayed. Plaintiff is directed to continue efforts to serve all Defendants. Status hearing date of 8/10/21 at 9:30 a.m. remains set. Notice mailed by Judge's staff (lf, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# EXHIBIT H

## THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DAVID FLEURY, individually and on behalf of those similarly situated.,

        Plaintiff,

     v.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

No. 20 C 390

Judge Jorge L. Alonso

## MEMORANDUM OPINION AND ORDER

Plaintiff David Fleury filed this putative class action against Defendant Union Pacific, alleging that Defendant violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq. ("BIPA"). The Court previously lifted the stay of discovery in this case. Presently before the Court is Defendant's renewed motion to stay. Having now had the benefit of full briefing on the issue and for the reasons set forth below, the Court grants in part and denies in part the motion to stay [50]. Because of this ruling, the Court denies Plaintiff's motion to compel [61].

## BACKGROUND

Defendant operates a network of railroads in North America that includes facilities located in Illinois. Defendant is a Delaware Corporation with its principal place of business in Nebraska. [1 at ¶8]. Plaintiff worked as a truck driver and visited rail yards in Illinois owned and operated by Defendant. Plaintiff is a citizen of the state of Illinois, who is suing under the Class Action Fairness Act, 28 U.S.C. §1322(d) et seq., for an amount more than $5,000,000.00 [29 at ¶ 14]. Plaintiff alleges that Defendant required him to scan his "biometric identifiers and/or biometric information" into certain "identity verification kiosks" when Plaintiff visited

Defendant's facilities. Plaintiff alleges that Defendant collected and stored this biometric information without informing him or others in writing that it was doing so in violation of the BIPA.

At a status hearing on April 9, 2021, the Court questioned Defendant's counsel as to the basis for its contemplated motion to stay (identified by the parties in a joint status report). Counsel provided an off-the-cuff argument as to why discovery should be stayed. Over objection, the Court lifted the stay on discovery. Defendant has now filed a renewed, written motion to stay.

## LEGAL STANDARD

Courts "have inherent power to stay proceedings and 'to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Stone v. I.N.S.*, 514 U.S. 386, 411 (1995) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Orders staying proceedings must both be "[]moderate" and within "reasonable limits." *Landis*, 299 U.S. at 257. In evaluating a motion to stay, courts consider whether the stay will: (1) "simplify the issues in question and streamline the trial," (2) "reduce the burden of litigation on the parties and on the court[,]" and (3) "unduly prejudice or tactically disadvantage the non-moving party[.]" *Genzyme Corp. v. Cobrek Pharm., Inc.*, No. 10-cv-00112, 2011 WL 686807, at *1 (N.D. Ill. Feb. 17, 2011); *Tap Pharm. Prods., Inc. v. Atrix Labs., Inc.*, No. 03-cv-7822, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004). "The proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

## DISCUSSION

Defendant argues that this case should be stayed pending the outcome in three pending appeals that will have significant impact on this litigation: (1) *Tims v. Black Horse Carriers, Inc.*,

2

No. 1-28-0563 (Ill. App. Ct., 1st Dist.); (2) *Marion v. Ring Container Technologies*, LLC, No. 3-20-0184 (Ill. App. Ct., 3rd Dist.); and (3) *Cothron v. White Castle Sys., Inc.*, Case No. 20-3202 (7th Cir.). Plaintiff opposes the motion to stay. In *Tims* and *Marion*, two separate Illinois Appellate Court panels (in the First and Third Districts) are set to decide whether a one-year, two-year, or five-year statute of limitations applies to BIPA claims. *See Tims v. Black Horse Carriers, Inc.*, No. 1-20-0562; *Marion v. Ring Container Techs., LLC*, No. 3-20-0184; *see also Herron v. Gold Standard Banking, Inc.*, No. 20-cv-07469, 2021 WL 1340804, at *2 (N.D. Ill. April 9, 2021). Relatedly, in *White Castle*, the Seventh Circuit is set to decide when a BIPA claim accrues, and more specifically whether a private entity violates the BIPA only when it first collects or discloses an individual's biometric data without making the required disclosures, or whether a violation occurs each time the entity collects or discloses the data. *See Cothron v. White Castle Sys., Inc.*, No. 19-cv-00382, Dkt. 141 (N.D. Ill. Oct. 1, 2020). For the sake of streamlining the analysis, the Court considers the simplicity and burden factors together, and then finally the undue prejudice factor.

## I. Simplifying-the-Issues and Reducing-the-Burden

To stay this case, Defendants must first show that a stay will simplify the issues in dispute and reduce the burden of litigation on the parties. *Genzyme Corp.*, 2011 WL 686807, at *1. Defendant argues that each appeal could significantly impact the instant case, or, at a minimum, narrow the issues for discovery, summary judgment, and/or trial. This argument has merit. If the Seventh Circuit decides in *White Castle* that a BIPA claim accrues on first use, and if the Illinois Appellate Courts decide in *Tims* and *Marion* that BIPA is subject to a one-year statute of limitations, then Plaintiff's claim may be time barred, although discovery will certainly still be needed on that issue. If, however, those claims are not decided in Defendant's favor, or in

a manner otherwise beneficial to it in this case, then those defenses fall by the wayside. Equally important, these decisions will have a significant impact on class certification issues—most obviously on the size of the prospective class.

Plaintiff counters by pointing out that even if these decisions come down in Defendant's favor, this case will not be over because (1) the Illinois Supreme Court has the final say and decisions of lower courts indicate that the Supreme Court would find that a five-year statute of limitations applies and (2) Plaintiff would still be entitled to discovery to oppose any motion for summary judgment. First, Plaintiff's argument that lower court decisions signal how the Illinois Supreme Court would rule is unpersuasive. Although Plaintiff correctly notes that most lower courts have found that the statute of limitations for BIPA claims is five years, the appellate courts may disagree. *See Herron*, No. 20-cv-07469, 2021 WL 1340804, at *4. And those appellate court decisions would likely be controlling here since this Court is sitting in diversity and applying Illinois law here. *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently"). The Court is not convinced that lower court rulings provide any indication that the Illinois Supreme Court would conclude that a five-year statute of limitations applies to BIPA claims. Indeed, the court in *Donet v. Vivid Seats LLC* addressed an analogous argument, but still found that a stay was warranted. *See Donets*, No. 20-cv-3551, Dkt. 37, at p.3 (N.D. Ill. December 15, 2020) ("Donets opposes the stay, arguing that 'there is no reason to suspect that the Appellate Court in *Tims* or *Marion* would depart from what seems to be an elementary application of an unambiguous statute to the undisputed facts of a case' and hold that BIPA claims are subject to a five (5)-year limitations period"). Moreover,

Plaintiff's opinion that it is unlikely all three cases will come down in Defendant's favor is of no consequence. At best, assuming the appellate courts disagreed with those lower court decisions, that would indicate that this issue is contested and in need of clarification.

Second, the fact that Plaintiff would still be entitled to some discovery even if these appeals were decided in Defendant's favor is not a reason to deny the motion to stay. Rather, the question the Court is tasked with answering is whether the stay will facilitate the simplification of the issues in question and reduce the burdens of litigation on the parties. Here, the Court answers these questions in the affirmative. The finding that a stay is appropriate here is supported by decisions from several other courts in this district that have considered similar motions. *See Johns v. Paycor, Inc.*, No. 20-cv-00264, Dkt. 65 (N.D. Ill. May 11, 2021) (staying case pending appeals in *Tims*, *Marion*, and *White Castle*); *Herron v. Gold Standard Baking, Inc.*, No. 20-cv-07469, 2021 WL 1340804, at *5 (N.D. Ill. Apr. 9, 2021) (same); *Roberson v. Maestro Consulting Servs. LLC*, No. 20-cv-00895-NJR, 2021 WL 1017127, at *2 (S.D. Ill. Mar. 17, 2021) (same); *Kyles v. Hoosier Papa LLC*, No. 20-cv-07146, Dkt. 22 (N.D. Ill. Mar 4, 2021) (same); *Wilson v. Am. Stair Corp. Inc.*, No. 20-cv-07321, Dkt. 10 (N.D. Ill. Feb. 22, 2021) (staying case pending *Tims*); *Varnado v. West Liberty Foods*, No. 20-cv-2035, 2021 WL 545628, at *1-2 (N.D. Ill. Jan 5, 2021) (staying case pending *Tims*); *Donets v. Vivid Seats LLC*, No. 20-cv-03551, Dkt. 37 (N.D. Ill. Dec. 15, 2020) (staying case pending appeals in *Tims*, *Marion*, and *White Castle*); *Jenkins v. Regal Cinemas, Inc.*, No. 20-cv-03782, Dkt. 32 (N.D. Ill. Dec. 1, 2020) (staying case pending *White Castle*); *Vaughan v. Biomat USA, Inc.*, No. 20-cv-04241, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020) (staying case pending *Tims*); *but see Rogers v. BNSF Railway*, Case No. 19-cv-3083, Dkt. 76 (N.D. Ill. January 29, 2021) (denying motion to stay in

BIPA case). Accordingly, the Court finds that the simplifying-the-issue and reduce-the-burden factors weigh in favor of a stay.

## II. Undue Prejudice or Tactical Disadvantage

Having found that the first two factors favor a stay, the Court must still consider whether a stay would unduly prejudice or tactically disadvantage the Plaintiff. *Genzyme Corp.*, 2011 WL 686807, at *1. Defendant argues that any prejudice to Plaintiff would be minimal at most, and far outweighed by the advantage of clarifying the statute of limitations issue as it applies to this case. Defendant also argues that Plaintiff's claims of prejudice are speculative and that he has not identified any concrete harm that would result from the imposition of a stay. Plaintiff, on the other hand, argues that he would be prejudiced because he has had no opportunity thus far to learn how his biometric information was collected, stored, or handled, and that he has had no opportunity to test Defendant's assertion that it is now BIPA compliant. Plaintiff further argues that the longer this case lingers, the more difficult it will be to locate, notify, and possibly compensate other class members who may change jobs or move throughout the country.

The Court finds that any prejudice to Plaintiff is not undue and that a stay is appropriate. First, the Court notes that the *Tims* and *Marion* cases are fully briefed, *see Donets*, Case No. 20-cv-3551, Dkt. 37, at p.4 n.4 (N.D. Ill. December 15, 2020), and that *White Castle* is fully briefed and set for oral argument on September 14, 2021, *Cothron v. White Castle*, Case No. 20-3202, Dkt. 58 (7th Cir. June 21, 2021). As such, the stay here will be of limited duration. Second, Plaintiff's contention that he will not be able to locate prospective class members because of this delay, while possible, is speculative at best. Similarly, Plaintiff's argument that he has not been able to determine if Defendant has cured its alleged BIPA violations and that a stay of discovery will prevent him from testing this claim is unavailing. This argument is premised on the

inference that Defendant may still be violating BIPA, which, as other courts have found, is also speculative. *See Herron*, 2021 WL 1340804, at *5; *Vaughan*, 2020 WL 6262359, at *3. In short, weighing all the relevant factors, the Court joins with the well-reasoned decisions by other courts in this district, and finds that a stay is appropriate. However, although the Court finds that a stay of discovery is appropriate, there is no benefit for staying the filing of an answer to the First Amended Complaint. Defendant can easily include an affirmative defense based on the statute of limitations, which may be made untenable by the rulings in *Tims*, *Marion*, and *White Castle*. If that becomes the case, then dropping the statute of limitations defense would be a simple matter of amendment, or not pressing the issue at summary judgment or trial.

## CONCLUSION

For the reasons detailed above, the Court grants in part and denies in part Defendant's motion to stay [50]. The motion to stay discovery is granted. However, finding that there is no benefit to delay the filing of an answer, Defendant is directed to file an answer to Plaintiff's First Amended Complaint by July 9, 2021. Because the Court finds that a stay is appropriate, Plaintiff's motion to compel [61] is denied. The parties are directed to file a joint status report regarding the status of the *Tims*, *Marion*, and *White Castle* cases on October 19, 2021.

**SO ORDERED.**                                        **ENTERED:  June 23, 2021**

_____
**JORGE L. ALONSO**
**United States District Judge**

# EXHIBIT I

2021 WL 2025896
Only the Westlaw citation is currently available.
United States District Court, C.D. Illinois.

JAMES REGAN, Plaintiff,

v.

BAJCO ILLINOIS LLC, Defendant.

Case No. 21-cv-3064
|
May 21, 2021

## OPINION

TOM SCHANZLE-HASKINS UNITED STATES MAGISTRATE JUDGE

**\*1** This matter comes before the Court on Defendant Bajco Illinois LLC's (Bajco) Motion to Stay Proceedings (d/e 12) (Motion). For the reasons set forth below, the Motion is ALLOWED, and the matter is stayed for 90 days.

## BACKGROUND

Plaintiff James Regan brings this action against his former employer Bajco for violations of the Illinois Biometric Information Privacy Act (BIPA). 740 ILCS 14/1, et seq. Regan filed the action in Illinois Circuit Court for Sangamon County, Illinois. Bajco removed that action to this Court. Notice of Removal (d/e 1). Regan alleges he previously worked for Bajco. He alleges that he was required to provide Bajco, or its agent, with his fingerprint, and he was required clock-in and clock-out at work by scanning his fingerprint on the biometric timeclock device. Notice of Removal, Exhibit 2, Class Action Complaint, ¶¶ 33-37. Regan alleges Bajco violated the BIPA by failing to create written policies, make them publicly available, establish a retention schedule and destruction guidelines for retained biometric information (Count I); failing to provide required notices to Regan and securing his written consent before capturing his fingerprint (Count II); disseminating Regan's fingerprint without his consent (Count III). Regan brings the action on behalf of himself and other employees of Bajco's facilities in Illinois. Class Action Complaint, ¶¶ 76-103. Regan seeks declaratory, injunctive, and monetary relief. Regan seeks

$1,000 in statutory damages for each negligent violation of BIPA and $5,000 for each intentional or reckless violation, plus prejudgment interest. Class Action Complaint, Prayer for Relief. Bajco has answered and asserted various affirmative defenses. Defendant's Answer and Affirmative Defenses to Plaintiff's Class Action Complaint (d/e 14).

Bajco has also moved to stay the proceeding pending the resolution of four appeals now pending: Cothron v White Castle System, Inc., Case No. 20-3202 pending before the Seventh Circuit Court of Appeals; Tims v. Black Horse Carriers, Inc., Case No. 1-20-0562, pending before the Illinois Appellate Court for the First District; Marion v. Ring Container Techs., LLC, No. 3-20-0184, pending before the Illinois Appellate Court for the Third District; and McDonald v. Symphony Bronzeville Park, LLC, No. 126511, pending before the Illinois Supreme Court.

The Cothron case concerns whether a private entity, such as an employer, violates BIPA only when the entity allegedly first collects or first discloses biometric data, such as a fingerprint, without complying with BIPA, or whether a violation occurs each time that entity allegedly collects or discloses the individual's biometric data. In Regan's case, the issue would be whether one violation occurred during his employment and the cause of action accrued when he allegedly provided his fingerprint to Bajco, or did a separate violation occur each time he allegedly clocked in or out with his fingerprint and each time Bajco allegedly disseminated his fingerprint to a third party.

**\*2** The Tims and Marion cases address which statute of limitations applies. The BIPA does not include a statute of limitations. The issue in these appeals is which of these three possible statutes of limitations applies: the Illinois one-year statute of limitations for publications of matter violating the right to privacy, 735 ILCS 5/13-201; the two-year statute of limitations for personal injury torts, 735 ILCS 5/13-202; or the five-year catchall statute, 735 ILCS 5/13-205.

The McDonald case addresses whether the Illinois Workers' Compensation Act (IWCA), 820 ILCS 305/1, preempts employees' claims against employers under BIPA. Regan opposes the proposed stay.

## ANALYSIS

The Court has broad discretion in deciding whether to stay proceedings. United States Securities and Exchange Commission v. Glick, 2019 WL 78958 at *5 (N.D. Ill. Jan. 2, 2019). The relevant factors in considering whether to stay an action are: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." Markel American Ins. Co. v. Dolan, 787 F.Supp.2d 776, 779 (N.D. Ill. May 11, 2011); see Mintun v. Kenco Logistics Services LLC, 2020 WL 1700328, at *1 (C.D. Ill. April 7, 2020).

Regan urges the Court to apply the standard for stays pending appeal in this case. Plaintiff's Opposition to Defendant's Motion to Stay Proceedings (d/e 13) (Opposition), at 3-4 (The Court cites to the pagination from the Court's CM/ECF system because Plaintiff did not number the pages of his Opposition.). The Court disagrees. A stay pending appeal stays a proceeding while a party in that proceeding seeks to challenge a lower court decision in that proceeding. The standard for a stay pending appeal tracks the standard for a preliminary injunction because such a stay effectively enjoins the effect of lower court's decision. See In re A& F Enterprises, Inc. II, 742 F.3d 763, 766 (7th Cir. 2014). In this case, Bajco does not seek to stay an adverse decision in this case. The question here is how to manage the course of this case. The standard for stays pending appeal does not apply. The Court addresses the appropriateness of a stay pending the outcome of the McDonald, Tims, Marion, and Cothron cases as follows.

McDonald

In McDonald, The Illinois Supreme Court will address whether the IWCA preempts BIPA actions by employees against employers. The Illinois Appellate Court, lower Illinois courts, and federal district courts have consistently found that the IWCA does not preempt claims for statutory damages. See, McDonald v. Symphony Bronzeville Park, 2020 IL App (1st) 192398 ¶ 27, 2020 WL 5592607, at *8 (Ill. App. Ct. 1st Dist. September 18, 2020); Herron v. Gold Standard Baking, Inc., 2021 WL 1340804, at *2 (N.D. Ill. April 9, 2021); Mintun, 2020 W 1700328, at *2; Plaintiff's Opposition to Defendant's Motion to Stay Proceedings (d/e 13) (Opposition), at 4 n.4 (collecting Illinois trial court decision on IWCA preemption).[1] The Illinois Appellate Court decision in McDonald is currently authoritative and controlling on this issue. See Nationwide Agribusiness Ins.

Co. v. Dugan, 810 F.3d 446, 450 (7th Cir. 2015) ("Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently.").

[1]    The Court uses the pagination from the Court's CM/ECF system since Regan did not paginate his Opposition. See Local Rule 5.1(B) ("All documents must have one inch margins on all sides and each page must be numbered.").

**\*3** The Illinois Supreme Court could disagree with these courts and find IWCA preemption. If so, this matter would be resolved. Such an outcome is unlikely given authoritative decision from the Illinois Appellate Court and the persuasive authority from the other Illinois courts and federal district courts. See Herron, 2021 WL 1340804, at *2; Mintun, 2020 WL 1700328, at *2. Under these circumstances the Court finds that a stay to wait for a decision in McDonald is not likely to simplify the issues, streamline the trial, or reduce the burden of litigation on the parties. The Court will not grant a stay to wait for a decision in McDonald.

Tims and Marion

The Tims and Marion decisions could also materially affect this case by determining the appropriate statute of limitations. The applicable statute of limitations could also affect whether Regan has a claim, depending on when he worked for Bajco. The Complaint does not allege his dates of employment. See Complaint, ¶¶ 1, 33-70. The five-year catchall statute would also include more employees in the potential class than the one-year rights to privacy statute. The size of the class could materially affect the scope of discovery. Knowing whether Regan's claim is barred and knowing the scope of the possible class claims would simplify issues and streamline the trial. Greater certainty about Regan's claim and the scope of the possible class would also reduce the burden of litigation on the parties.

No Illinois Appellate Court has decided the appropriate statute of limitations for BIPA claims. The Tims and Marion decisions, therefore, could be controlling if the two courts agree on the correct statute of limitations for BIPA. Nationwide Agribusiness Ins. Co., 810 F.3d at 450 (7th Cir. 2015). An authoritative decision from the Tims and Marion courts could provide clarity that could simplify the issues, streamline the trial, and reduce the burden of litigation on the parties. See Id., at *4.

Regan again argues that a stay is not necessary because the lower courts have found that the five-year catchall statute applies. See Bryant v. Compass Group USA, Inc., 2020 WL 7013963, at *1 (N.D. Ill. 2020); Opposition, at 4, (citing Meegan v. NFI Indus., Inc., 2020 WL 3000281, at *4 (N.D. Ill. June 4, 2020); and Burlinski v. Top Golf USA Inc., 2020 WL 5253150, at *8 (N.D. Ill. Sept. 3, 2020); Robertson v. Hostbury Hospitality Group, Inc., 2019 WL 8640568, at *4 (Ill. Cir. Ct. July 31, 2019). Unlike the IWCA preemption issue, no Illinois Appellate Court has issued a decision on the applicable statute of limitations in BIPA cases. In light of the lack of an Illinois Appellate Court decision, the Court concludes that a stay is appropriate. See Herron, 2021 WL 1340804, at *3; Roberson v. Maestro Consulting Services LLC, 2021 WL 1017127, at *2 (S.D. Ill. March 17, 2021); Varnado v. West Liberty Foods, 2021 WL 545628, at *1 (N.D. Ill. 2021 January 5, 2021); but see Quarles v. Pret A Manger (USA) Limited, 2021 WL 1614518, at *4 (N.D. Ill. April 26, 2021) (denying a stay based on the progress of Illinois Appellate Court cases on the issues.). Further, the potential delay from waiting for a decision in Tims decision, at least, may be minimal because the case was fully briefed by the time the Varnado decision was issued in January 2021. See Varnado, 2021 WL 545628, at *2.

### Cothron

The Cothron decision could also materially affect whether Regan's cause of action accrued. If the Seventh Circuit determines that a BIPA cause of action accrues once when a defendant initially collected biometric data, then the statute of limitations in this case ran from the day Regan allegedly first provided his fingerprint to Bajco when he started work. If the Seventh Circuit determines that a new violation occurs every time an employee clocks in or out with a fingerprint, then Regan accrued a new cause of action each day he worked for Bajco. Regan's claim would not be entirely barred as long as his last day of work was within the statute.

*4 The Cothron decision could also materially affect the scope of the possible class claims. If the cause accrued only once when the employee first provided his or her fingerprint, then the class would be limited to persons hired within the statute of limitations. If a new cause accrued every time the employee clocked in or out, then the class could include every person who worked for Bajco during the limitations period,

even employees hired before the limitations period. The scope of the possible class will materially affect the size of the class, the scope of discovery on class claims, and the trial of class claims. In light of these considerations, staying the matter until a decision in Cothron will provide clarity that will simplify the issues, streamline the trial, and reduce the burden of litigation on the parties. See Herron, 2021 WL 1340804 at *5; Roberson, 2021 WL 1017127 at *2.

Regan argues that a stay will prejudice him and members of the class because Bajco continues to retain the biometric information and all are at risk:

> If this lawsuit is stayed Plaintiff and the proposed Class will continue to have a Sword of Damocles hanging over their heads as a result of Defendant's unauthorized and unlawful data collection, waiting for their data to be either mis-used by Defendant or any third-party Defendant chose to distribute their Biometrics too; or worse yet for a malicious actor to steal their Biometric data because there are no known data security measures in place.

Opposition, at 7. Regan also notes that the BIPA expressly discusses the risk to individuals from identity theft if biometric information is stolen. Id. at 8, citing 740 ILCS 14/5(c). Regan's concern in this case is speculative at best. Regan does not allege any actual injury from Bajco's alleged collection, retention, and dissemination of his fingerprint. Regan only asks for statutory damages. Complaint, Prayer for Relief. Given the lack of any showing or even allegation of concrete harm, Regan's speculation is not sufficient to outweigh the benefits to the stay to further this litigation.

THEREFORE, IT IS ORDERED that Defendant Bajco Illinois LLC's (Bajco) Motion to Stay Proceedings (d/e 12) is ALLOWED. This matter is STAYED until August 19, 2021. The parties are directed to inform the Court when decisions are entered in the Tims, Marion, and Cothron cases. The parties are also directed to file a status report by August 10, 2021, informing the Court of the status of the Tims, Marion, and Cothron cases and the parties' positions on the appropriateness of continuing the stay.

### All Citations

Slip Copy, 2021 WL 2025896

© 2021 Thomson Reuters. No claim to original U.S. Government Works.

# EXHIBIT J

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

BRENDA HERRON,

        Plaintiff,

      v.

GOLD STANDARD BAKING, INC.,

        Defendant.

No. 20-cv-07469

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

While working at Gold Standard Baking, Inc. ("GSB"), Brenda Herron scanned her fingerprints to clock in and out of each shift. She claims that GSB used this timekeeping system to collect and retain her fingerprints without her informed consent, in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. GSB moved to dismiss Herron's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and also moved to stay the proceedings. At the status hearing on February 11, 2021, the Court informed the parties that it would decide GSB's motion to stay before turning to the motion to dismiss. For the following reasons, the motion to stay is granted in part and denied in part.

## Standard

District courts have the power to control their own dockets, including the discretion to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019). In deciding whether to grant a stay, courts "balance the competing interests of the parties and the interest of the judicial

system." *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (citation omitted). This balancing act includes consideration of three main factors: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party." *In re Groupon Derivative Litig.,* 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (citations omitted).

## Background

GSB is an industrial baking company that uses a biometric timekeeping device to track employees' hours. When Brenda Herron first used the device on October 4, 2017, a scanner captured an image of her fingerprint and converted it into a unique template. Each time Herron used the device thereafter, the scanner captured a new image of her fingerprint, created a new template, and compared the new template to the original to confirm Herron's identity.

Herron worked at GSB five days a week. She was required to scan her fingerprints at least eight times throughout each workday; that is, to clock in at the beginning of the day, to clock out for a break, to clock in after the break, to clock out for lunch, to clock in from lunch, to clock out for a second break, to clock in from the second break, and to clock out at the end of the day. Herron left GSB in December 2019.

Herron claims that GSB's timekeeping practices violated BIPA. Enacted in 2008, BIPA aims to protect the privacy interests of personal biometric information,

including fingerprints. The statute is enforced through a private right of action, available to "[a]ny person aggrieved by a violation." 740 ILCS 14/20. Section 15 of the statute places restrictions on the collection, retention, and disclosure of biometric information. Section 15(b) requires private entities seeking to collect biometric information to first (1) inform the person whose biometrics are being collected, in writing, that the information is being collected or stored; (2) inform the person in writing of the "specific purpose and length of term" for which the biometrics are being collected, stored, and used; and (3) receive a written release from the person. *Id*. § 14/15(b). Herron alleges that GSB failed the first two requirements and that each fingerprint scan was a separate violation of BIPA.

Herron filed this action in state court on November 13, 2020. GSB removed the case to federal court, and then moved to dismiss Herron's complaint and stay the proceedings. GSB's motion to dismiss advances five separate arguments, two of which are relevant here. Namely, that Herron's claims are preempted by state labor law and time-barred by the statute of limitations. According to GSB, the proceedings should be stayed because whether Herron's claims are, in fact, preempted and untimely will be determined by cases pending before the Illinois Supreme Court, Illinois Appellate Court, and the Seventh Circuit Court of Appeals. The Court considers each case in turn.

Analysis

## I.    Stay Pending the Illinois Supreme Court's Decision in *McDonald*

GSB first seeks to stay this matter pending the Illinois Supreme Court's decision in *McDonald v. Symphony Bronzeville Park, LLC*, No. 126511. In that case, the court will

3

decide whether BIPA claims brought by employees against their employers are preempted by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1, *et seq*. GSB argues that this Court should await the *McDonald* decision because it could be dispositive of GSB's preemption defense.

While it is true that the outcome in *McDonald* may impact this case, the Court declines to stay the proceedings on this basis. Indeed, "[w]here the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) (citation omitted). An Illinois Appellate Court has already ruled that the IWCA does *not* preempt BIPA claims brought by employees. *McDonald v. Symphony Bronzeville Park*, 2020 WL 5592607, *8 (Ill. App. Ct. Sept. 18, 2020). So has nearly every state and federal court to consider the question. *See, e.g.*, *Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604, 615-16 (N.D. Ill. 2020) (collecting state and federal cases to show that "courts have unanimously rejected" the idea that BIPA claims are preempted by the IWCA). Furthermore, at least three federal courts and several state courts have refused to stay BIPA proceedings pending resolution of the preemption issue. *See, e.g.*, *Roberson v. Maestro Consulting Servs. LLC*, 2021 WL 1017127, at *1 (S.D. Ill. Mar. 17, 2021); *Mintun v. Kenco Logistics Servs. LLC*, 2020 WL 1700328, at *2 (C.D. Ill. Apr. 7, 2020); *Donets v. Vivid Seats, LLC*, 20-CV-3551, Dkt. 27 (N.D. Ill. Dec. 12, 2020) (Valderrama, J.); *Thome v. Flexicorps, Inc.*, No. 2018-CH-01751 (Cir. Ct. Cook Cty. May 8, 2018).

Because an Illinois Appellate Court has concluded that the IWCA does not preempt an employee's BIPA claim brought against her employer, and because most other courts have held the same, the Court denies GSB's motion to stay this case pending the outcome in *McDonald*.

## II. Stay Pending the Illinois Appellate Court's Decisions in *Tims* and *Marion*

GSB argues next that a stay is warranted pending two Illinois Appellate Court decisions—*Tims v. Black Horse Carriers, Inc.*, No. 1-20-0562, and *Marion v. Ring Container Techs., LLC*, No. 3-20-0184—because those cases could decide whether BIPA claims are potentially subject to a one-, two-, or five-year statute of limitations. According to GSB, any decision that the applicable statute of limitation is one or two years will mean that Herron's claims are untimely since she filed her complaint (on November 13, 2020) at least three years after she first used GSB's timekeeping system (on October 4, 2017).

For her part, Herron argues that even if *Tims* and *Marion* decide that the applicable statute of limitations for BIPA claims is one year, her claims are still timely under the *American Pipe* tolling doctrine. That doctrine was first enunciated by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and later expanded in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). At its core, the doctrine provides that the timely filing of a class action tolls the applicable statutes of limitations for all persons who fall within the scope of the class complaint. If class certification is ultimately denied, then putative plaintiffs may choose to pursue individual claims either in the still-pending case or in new individual cases. Because the doctrine suspends the applicable limitations period, it "eliminates the need for members of the

5

putative class to rush to court to protect their rights while class certification is still pending and uncertain in the original action." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020).

Herron points out that a class action was filed against GSB in the Circuit Court of Cook County less than a year after she first used GSB's fingerprint system. *See* R. 17 at 5-6 (citing *Johnson v. Gold Standard Baking, Inc. and Elite Labor Services, Ltd.*, No. 2018-CH-09011 (Cir. Ct. Cook Cty. July 18, 2018)). According to Herron, she is a putative plaintiff in the *Johnson* action since the complaint alleges that GSB failed to comply with BIPA's disclosure mandates during 2017-2018, and because the class definition includes "[a]ll individuals for any Defendant in the State of Illinois who had their fingerprints collected . . . by any Defendant during the applicable statutory period." While no certification decision has been made in the *Johnson* case, Herron nevertheless argues that her claims should be tolled in this case.

The trouble for Herron is that *American Pipe* and its progeny focus on situations where subsequent actions are filed *after* class certification is denied, and Herron filed her action *before* the certification decision.[1] Herron therefore seeks the benefits of tolling even though the putative *Johnson* class remains in limbo. As best the Court can tell, neither the Seventh Circuit nor Illinois courts have addressed this precise situation. But

---

[1] The Court also recognizes that *American Pipe* applies only to claims under federal law for which the period of limitations is also federal. *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 265 (7th Cir. 1998). But that does not necessarily preclude application of the *American Pipe* doctrine to this case, because when state law supplies the period of limitations, it also supplies the tolling rules, and Illinois courts have largely adopted *American Pipe* and *Crown, Cork & Seal. See Steinberg v. Chicago Medical School*, 371 N.E.2d 634 (1977); *Mabry v. Vill. of Glenwood*, 41 N.E.3d 508, 515 (Ill. App. Ct. 2015) (collecting cases).

other courts in this District have, and most have refused to extend tolling to those in Herron's situation. *See Levine v. Bally Total Fitness Holding Corp.*, 2006 WL 8460936, at *7 (N.D. Ill. Sept. 29, 2006) ("Here, plaintiff has chosen to pursue separate litigation prior to a determination on class certification; therefore, the *American Pipe* tolling rule is not available to him."); *Shaffer v. Combined Ins. Co. of Am.*, 2003 WL 22715818, at *3 (N.D. Ill. Nov. 18, 2003) ("[P]laintiffs that file their own individual lawsuit before class certification is denied do not obtain the benefits of . . . class-action tolling."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1998 WL 474146, at *8 (N.D. Ill. Aug. 6, 1998) (declining to apply the tolling doctrine where plaintiffs "made a conscious decision early on to pursue their claims on an entirely separate, though essentially parallel, track from that of the Class case"); *Chemco, Inc. v. Stone, McGuire & Benjamin*, 1992 WL 188417, at * 2 (N.D. Ill. July 29, 1992) ("Only if class certification was denied . . . would the putative class members be able to bring suits individually under *American Pipe* [and *Crown, Cork & Seal* ].").

From one perspective, denying plaintiffs like Herron the benefits of tolling makes sense because filing separate lawsuits in advance of the class certification decision undermines the policies supporting the tolling doctrine. As the Supreme Court has explained, tolling promotes "efficiency and economy of litigation" by discouraging putative class members from filing a "multiplicity of actions" before the limitations period ends. *Crown, Cork & Seal*, 462 U.S. at 351. When a plaintiff files her own action before the class certification determination, as is the case here, she creates the very inefficiency that the Supreme Court sought to prevent. *See In re*

*Allstate*, 955 F.3d at 615 ("*American Pipe* tolling is intended to promote efficiency and economy in litigation."); *In re Copper Antitrust Litig.*, 436 F.3d 782, 794 (7th Cir. 2006) (Cudahy, J., concurring) (noting that the "essential rationale" of *American Pipe* is to avoid "clutter[ing] the courts with duplicative lawsuits"); *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998) (tolling is "essential to prevent needless 'protective' filings").

On the other hand, several courts—including a few in this District—have supplied good reasons why the tolling doctrine should be extended to early filers. For one thing, the Supreme Court has painted with a broad brush in defining the doctrine: "The commencement of a class action suspends the applicable statute of limitations as to *all asserted members* of the class that would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal*, 462 U.S. at 353 (quoting *American Pipe*, 414 U.S. at 554) (emphasis added). Nothing in that statement, or other Supreme Court tolling decisions, "suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is resolved." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (extending class tolling doctrine to early filers); *see also In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) (same); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1232 (10th Cir. 2008) (same); *Rochford v. Joyce*, 755 F. Supp. 1423, 1428 (N.D. Ill. 1990) (same). What is more, depriving plaintiffs like Herron of the benefits of tolling would render them "dependent on the pace set by [class action] attorneys and the Court alike." *Mason v. Long Beach Mortg. Co.*, 2008 WL 4951228, at *2 (N.D. Ill.

Nov. 18, 2008) (extending class tolling to early filers). That pace could be dreadfully slow, keeping putative class members on the sidelines for years until the certification question is finally resolved. *Id.*

At this juncture, the Court need not decide whether the tolling doctrine applies to Herron. When ruling on a motion to stay, courts are required to consider whether the stay will "simplify the issues in question" and "reduce the burden of litigation on the parties and on the court." Both factors counsel in favor of a stay here. Indeed, if *Tims* and *Marion* conclude that the applicable statute of limitations for BIPA claims is five years, then the tolling argument will fall by the wayside and the remaining issues will be simplified for both the Court and the parties. That point is especially salient here since GSB has moved to dismiss Herron's complaint on at least five different grounds. *See Varnado v. W. Liberty Foods*, 2021 WL 545628, at \*1 (N.D. Ill. Jan. 5, 2021) (granting stay because it "significantly advance[d] judicial economy"). And although most lower courts have already found that the statute of limitations for BIPA claims is five years, it is possible that the Illinois Appellate Courts in *Tims* and *Marion* will disagree, and that decision, rather than decisions entered by lower courts, would likely control here. *See Nationwide Agribusiness*, 810 F.3d at 450. Unlike the preemption issue and *McDonald*, no Illinois Appellate Court has weighed in on the statute of limitations question. GSB's motion to stay this case pending the outcomes in *Tims* and *Marion* is therefore granted.

### III. Stay Pending the Seventh Circuit's Decision in *White Castle*

Finally, GSB moves to stay this matter pending the Seventh Circuit's decision on an interlocutory appeal in *In Re: White Castle System, Inc.*, No. 20-8029, Dkt. 9 (7th Cir. Nov. 9, 2020). The controlling question in that case is whether a private entity violates BIPA only when it *first* collects or discloses an individual's biometric data without making the required disclosures, or whether a violation occurs *each time* the entity collects or discloses the data.[2]

The Court finds it appropriate to stay this case pending the *White Castle* decision because the outcome there could be dispositive of the timeliness issue here. As stated, Herron first swiped her fingerprint in October 2017, and she filed her complaint in November 2020. Should the Seventh Circuit find that a BIPA violation occurs only when an entity first collects an individual's biometric data, Herron's claims may be time-barred if *Tims* and *Marion* also find that a one or two-year statute of limitations applies. *See Donets*, 20-CV-3551, R. 27 (granting motion to stay on

---

[2] The full question on appeal is:

> Whether a private entity violates Sections 15(b) or 15(d) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq., only when it is alleged to have first collected (§ 15(b)) or to have first disclosed (§ 15(d)) biometric information or biometric identifiers ("biometric data") of an individual without complying with the requirements of those Sections, or whether a violation occurs each time that a private entity allegedly collects (§ 15(b)) or discloses (§ 15(d)) the individual's biometric data without complying with the requirements of the applicable subsection.

*See Cothron v. White Castle Sys., Inc.*, No. 19-CV-00382, Dkt. 141 (N.D. Ill. Oct. 1, 2020).

similar grounds); *Roberson*, 2021 WL 1017127, at *2 (same). And while *American Pipe* may moot the timeliness issue altogether, the Court still finds it prudent to stay this matter because *White Castle*, *Tims*, and *Marion* will provide much needed clarity as to whether GSB's statute of limitations argument is even in play. *See Vaughan v. Biomat USA, Inc.*, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020) (granting motion to stay because it made "little sense for the parties or the court to expend time and resources litigating dispositive issues where appellate guidance is forthcoming").

## IV.  Whether a Stay Will Prejudice Herron

Before ordering a stay, the Court must determine whether Herron will be "unduly prejudiced" or "tactically disadvantaged" by the delay. *In re Groupon Derivative*, 882 F. Supp. 2d at 1045. Herron claims that she will be prejudiced, but none of her arguments are availing. First, Herron contends that delaying the case means delaying relief. As an hourly employee, she says that she has been "hard hit" by the pandemic and that she needs money "sooner rather than later." While the Court is sympathetic to Herron's financial situation, her argument rests on the assumption that the case will be decided in her favor, which is far from certain at this stage in the proceedings. Indeed, the Court has not even decided whether Herron has stated plausible claims for relief. Herron's first argument therefore fails.

Herron argues next that a stay allows GSB "to continue any non-compliant storage, handling, and disclosure of [her] biometric information." R. 17 at 7. But nothing in Herron's complaint or opposition brief suggests that GSB is currently using her fingerprints in a way that violates BIPA. Her argument is thus speculative

at best, and not a sufficient basis for denying GSB's motion. *See Vaughan*, 2020 WL 6262359, at \*3 (rejecting similar argument).

Herron's next argument fails for similar reasons. She claims that a stay *may* result in the loss of important documents or key witnesses. That is true, and the Court is sensitive to this reality, but there is no allegation suggesting that relevant evidence has been lost or misplaced since the filing of Herron's complaint. Furthermore, the stay in this case is limited in duration. Indeed, once the decisions in *Tims*, *Marion*, and *White Castle* are issued, the proceedings will likely resume. *See Vaughan*, 2020 WL 6262359, at \*2 (finding that a stay limited in duration was unlikely to prejudice non-moving party).

Finally, Herron warns against endless delay. She worries that once *Tims*, *Marion*, and *White Castle* are decided, there will be other appeals and GSB will ask this Court to hit pause again. The Court shares this concern but does not believe that it justifies denying GSB's motion. At this point in the proceedings, GSB has only requested a stay until the *Tims*, *Marion*, and *White Castle* cases are decided. Once *Tims* and *Marion* are resolved, the Court and parties will likely have a better sense of whether Herron's claims are timely.

## Conclusion

For all these reasons, GSB's motion to stay, R. 13, is granted in part and denied in part. The Court stays this case pending the Illinois Appellate Court's decisions in *Tims* and *Marion*, and pending the Seventh Circuit's decision in *White Castle*. The status hearing scheduled for April 12, 2021 is vacated. The parties are to file a joint status report as soon as one of the three cases has been decided. In the meantime, the Court denies as moot GSB's motion to dismiss, R. 11, with leave to refile once the stay

is lifted, and grants GSB's unopposed motion to stay discovery pending the resolution

of the motion to dismiss.

ENTERED:

_Thomas M Durkin_

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: April 9, 2021

# EXHIBIT K

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

JABORI LITTLETON, individually, and on
behalf of all others similarly situated,

               Plaintiff,

     v.

LYDIA HEALTHCARE I, LLC,

               Defendant.

Case No. 2019-CH-12142

Hon. Raymond W. Mitchell

## ORDER

    This case coming to be heard for presentment on Lydia Healthcare I, LLC's ("Lydia")

Second Motion to Stay Proceedings pending decisions by the Illinois Supreme Court in

*McDonald v. Symphony Bronzeville Park, LLC*, No. 126511 (Ill.) ("*McDonald*") and by the First

District Appellate Court in *Mosby v. Ingalls Memorial Hospital*, No. 1-20-0822 (Ill. App. 1st

Dist.), the Court being duly advised by counsel for both Parties, IT IS HEREBY ORDERED:

1. Lydia's Second Motion to Stay Proceedings is granted;
2. This matter will be stayed until the next status date, which is set for December 9, 2021 at 1:00pm; and
3. If the Illinois Supreme Court has not ruled on *McDonald* by December 9, 2021, the Parties may submit an agreed order to continue the stay and no appearance will be required.

Dated: February ___, 2021

                              # 1992

                    The Honorable Raymond W. Mitchell

Prepared By:
Kathleen M. Ryan
SHOOK, HARDY & BACON L.L.P.
111 South Wacker Drive, Suite 4700
Chicago, IL 60606
Tel: (312) 704-7700
kmryan@shb.com
Firm No. 58950
*Counsel for Defendant Lydia Healthcare I, LLC*

**Judge Raymond W. Mitchell**

**FEB 0 4 2021**

**IRIS Y. MARTINEZ**
**Circuit Court - 1992**

# EXHIBIT L

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SAMUEL DONETS,
individually and on behalf of all
others similarly situated,

               Plaintiff,

     v.

VIVID SEATS LLC,

               Defendant.

No. 20-cv-03551
Judge Franklin U. Valderrama

## ORDER

Plaintiff Samuel Donets (Donets), a former employee of Defendant Vivid Seats LLC (Vivid Seats) brings this proposed class action against Vivid Seats for alleged violations of the Illinois Biometric Information Privacy Act (BIPA). R. 24, Am. Compl.[1] Vivid Seats moved to dismiss the amended complaint on three bases: (1) Donets' claim is time-barred by the statute of limitations; (2) Donets' request for damages are barred by the Exclusivity Provisions in the Illinois Workers' Compensation Act (IWCA); and (3) Donets has failed to sufficiently assert allegations that plausibly establish that Vivid Seats "willfully" or "recklessly" violated BIPA. R. 30, Mot. Dismiss. Simultaneously with its motion to dismiss, Vivid Seats moved to stay the proceedings pending: (1) appeals in two Illinois appellate court cases, (2) a petition for leave to appeal to the Illinois Supreme Court, and (3) an interlocutory appeal before the Seventh Circuit Court of Appeals. R. 32, Mot. Stay. Vivid Seats contends that each pending appeal and petition will inform the Court's analysis regarding the statute of limitations and IWCA's exclusive remedy provisions. *Id.* Donets opposes Vivid Seats' motion to stay. R. 35, Opp. Mot. Stay. For the reasons set forth below, Vivid Seats' motion to stay is granted in part and denied in part.

## Statement

District courts have the inherent power to control their own dockets, including the power to stay proceedings before them. *Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket."); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir.

---

[1]Citations to the docket are indicated by "R." followed by the docket number and, where necessary, a page or paragraph citation.

2019) ("[A] district court has inherent power to exercise its discretion to stay proceedings to avoid unnecessary litigation of the same issues."). How best to manage the court's docket "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). In evaluating whether to exercise their discretion to stay proceedings, courts consider "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the non-moving party." *Berkeley*IEOR v. Teradata Operations, Inc.*, 2019 WL 1077124, at *5 (N.D. Ill. Mar. 7, 2019).

## Statute of Limitations

Vivid Seats contends that this Court should stay the case pending decisions from the Illinois Appellate Court in *Tims v. Black Horse Carriers*, App. No. 1-20-0563 and *Marion v. Ring Container Techs., LLC*, App. No. 3-20-0184. Both cases will be addressing the currently unsettled question of which statute of limitations period applies to BIPA claims. "Federal courts hearing state law claims under diversity … apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). In this case, Donets' claims arise under Illinois law. Am. Compl. ¶ 1. Because the Illinois Supreme Court has not yet decided the applicable statute of limitations for BIPA claims, a decision from the Illinois Appellate Court would likely be binding here.[2] *See Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) ("Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently."); *see also Vaughan v. Biomat USA, Inc.*, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020) (staying a BIPA case until the Illinois Appellate Court's decision in *Tims*).

Vivid Seats also seeks to stay this case pending the Seventh Circuit's decision on an interlocutory appeal in *In Re: White Castle System, Inc.*, No. 20-8029 (*Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604 (N.D. Ill.)). The certified question is whether a private entity violates BIPA only when it first collects an individual's biometric information, or whether a violation occurs each time a private entity

---

[2]Of course, it is possible that the Illinois First District Appellate Court's decision in *Tims* will conflict with the Illinois Third District Appellate Court's decision in *Marion*. If that is the case, then this Court must predict how the Illinois Supreme Court would decide the issue. *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002).

collects or discloses the biometric data in violation of 740 ILCS 15(b) or 15(d).[3] *Cothron v. White Castle Sys., Inc.*, No. 19-cv-00382, Dkt. 141 (N.D. Ill. Oct. 1, 2020).

As noted above, in support of its Motion to Dismiss, Vivid Seats argues that Donets' claims are time-barred. Mot. Dismiss at 3–9. Vivid Seats therefore contends that a stay would be appropriate because the outcome of the appeals in *Tims* and *Marion* will constitute decisional authority that this Court should consider, which could potentially dispose of the entire case or at the least significantly reduce Donets' and the class' claims in scope and value. Similarly, Vivid Seats correctly states that the Seventh Circuit's decision in *White Castle* will be binding on this Court.

Donets opposes the stay, arguing that "there is no reason to suspect that the Appellate Court in *Tims* or *Marion* would depart from what seems to be an elementary application of an unambiguous statute to the undisputed facts of a case" and hold that BIPA claims are subject to a five (5)-year limitations period. Opp. Mot. Stay at 8. Donets further argues that the certified question on appeal in *White Castle* is unlikely to change the statute of limitations analysis, because the plain language of the statute makes clear that BIPA is violated each and every time an entity collects or discloses an individual's biometric data. *Id.* at 9 (citing *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 769 (N.D. Ill. 2019)).

The Court finds it appropriate to stay this case pending the *Tims* and *Marion* Illinois Appellate Court decisions on the applicable statute of limitations. The *Tims* and *Marion* decisions could control the Court's resolution of the timeliness issue and guide the parties' positions as they proceed with this litigation. *See Nationwide Agribusiness Ins.*, 810 F.3d at 450. And at least two judges in this District have stayed similar cases pending the Illinois Appellate Court's decision in *Tims*. *See Vaughan*, 2020 WL 6262359, at *2; *Bell v. SDH Servs. W., LLC*, 20-cv-3181, Dkt. 22 (N.D. Ill. Aug. 27, 2020). Both courts reasoned that the benefits of a stay pending a potentially dispositive decision outweighed the potential risks of the delay. In *Bell*, the court held that a stay was appropriate even though a statute of limitations argument was not appropriate for a motion to dismiss because the plaintiff did not include any relevant dates in the complaint. *Bell*, 20-cv-3181, Dkt. 22. Here, as Vivid Seats argues in its motion to dismiss, Donets included dates in his complaint, alleging that he used the time clock at issue "since at least 2015." Mot. Dismiss at 8 (citing Am. Compl. ¶ 27). So Vivid Seats' statute of limitations argument is properly raised on a motion to

---

[3]The full question on appeal is:

> Whether a private entity violates Sections 15(b) or 15(d) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq., only when it is alleged to have first collected (§ 15(b)) or to have first disclosed (§ 15(d)) biometric information or biometric identifiers ("biometric data") of an individual without complying with the requirements of those Sections, or whether a violation occurs each time that a private entity allegedly collects (§ 15(b)) or discloses (§ 15(d)) the individual's biometric data without complying with the requirements of the applicable subsection.

dismiss, and the Illinois Appellate Court's decisions in *Tims* and *Marion* could be dispositive.

A stay is also appropriate pending the Seventh Circuit's *White Castle* decision on when an injury occurs under BIPA. Contrary to Donets' argument that BIPA is "unambiguous and dispositive" as to when a violation occurs, as the district court in *White Castle* noted upon certification of the interlocutory appeal, "reasonable minds can and have differed as to the clarity of BIPA's statutory text and the extent to which suppositions about legislative intent should shape courts' application of it." *White Castle Sys., Inc.*, No. 19-cv-00382, Dkt. 141. As Vivid Seats points out, the district court in *White Castle* stayed proceedings pending the Seventh Circuit's interlocutory review, and the Seventh Circuit held that such a stay was "warranted." *White Castle Sys., Inc.*, No. 19-cv-00382, Dkt. 145; *White Castle*, No. 20-8029, Dkt. 9 (7th Cir. Nov. 9, 2020). So too here, the Seventh Circuit's decision may limit or eliminate Donets' and the class' timely claims and a stay is appropriate pending the appeal. Despite Donets' argument that the outcome of *White Castle* will never dispose of the case, Opp. Mot. Stay at 12—if the Seventh Circuit disagrees with the district court, and holds that a violation occurs only when the entity first collects or first discloses an individual's biometric data, it may dispose of Donets' claim if the Illinois Appellate Court were to hold that a one-year statute of limitations applies. Regardless of whether it disposes of the case, the Seventh Circuit's decision will impact the size of the class.

According to Vivid Seats, a stay would conserve the parties' and judicial resources, saving expenditures on potentially costly motion practice and discovery. Donets raises several arguments in opposition to the stay. He contends that a stay would unnecessarily delay the case and will not streamline the litigation. Opp. Mot. Stay at 11–12. He also argues that a stay will allow Vivid Seats to continue "to store and potentially use his biometric data in violation of BIPA." *Id.* at 11. Although the Court is mindful of the harms associated with the retention and potential misuse of sensitive data, a stay will cause minimal, if any, additional harm to Donets in this case, given the limited nature of the stay.[4] Moreover, Donets asserts that Vivid Seats is storing and "potentially" using sensitive data in violation of BIPA. When presented with arguments like these, courts have concluded that stays are still appropriate considering countervailing interests weighing in favor of a stay. *See, e.g., Vaughan*, 2020 WL 6262359, at *3. Donets' concerns do not justify denying Vivid Seats' request for a stay, taking into account the economies to be gained from staying this litigation. *See id.*; *see also Bell*, 20-cv-3181, Dkt. 22; *Treadwell v. Power Sols. Int'l, Inc.*, 18-cv-8212, Dkt. 120 (N.D. Ill. Apr. 1, 2020) (concluding that the plaintiff's

---

[4]This Court understands that both *Tims* and *Marion* are fully briefed. The Seventh Circuit granted the petition for permission to appeal in *White Castle* on November 9, 2020. A briefing schedule has not yet been set.

concerns did not justify denying a request for a stay, "especially when weighed against the time and expense the parties will expend in litigating his claims").

<em>Illinois Workers Compensation Act</em>

Vivid Seats also requests that the Court stay this case pending the decision of the Illinois Supreme Court on the defendant's petition for leave to appeal in *McDonald v. Symphony Bronzeville Park, LLC*. Mot. Stay ¶ 4, Ex. 4, *McDonald* Pet. The defendant seeks to appeal the Illinois Appellate Court's unanimous holding that the exclusivity provisions of the IWCA do not bar claims brought under BIPA. *McDonald* Pet. at 2. True, as Vivid Seats argues, the answer to that question would directly impact the outcome of Vivid Seats' second basis for dismissal—IWCA preemption. Mot. Stay ¶¶ 4, 6. But, as Donets contends, not only has the Illinois Supreme Court not yet accepted the petition, but also myriad state and federal district courts have held as did Illinois Appellate Court in *McDonald*, that the IWCA does not preempt BIPA claims. Opp. Mot. Stay at 6–7 (collecting cases). Additionally, many state courts, and at least one federal district court, have refused to stay BIPA litigation pending resolution of an appeal of the IWCA preemption issue. *Id.* at 13– 14 (collecting cases); *Mintun v. Kenco Logistics Servs. LLC*, 2020 WL 1700328, at *2 (C.D. Ill. Apr. 7, 2020).[5] Without ruling on the question directly, this Court agrees with the court in *Mintun* that it is unlikely that the Illinois Supreme Court would rule that IWCA preempts BIPA. 2020 WL 1700328, at *2.

Moreover, unlike the stay pending the Illinois Appellate Court's decisions on the fully-briefed appeals in *Tims* and *Marion*, and the interlocutory appeal currently pending before the Seventh Circuit, the Illinois Supreme Court has not yet granted the petition for leave to appeal in *McDonald*, and thus, the stay would not be as limited in duration. *Contra Vaughan*, 2020 WL 6262359, at *2 (a stay would be limited and unlikely to prejudice a party where it would be in place pending an appellate decision on a fully briefed case). Therefore, Vivid Seats' Motion to Stay the proceedings pending the Illinois Supreme Court's decision in *McDonald* is denied.

For the foregoing reasons, Vivid Seats' Motion to Stay [32] is granted in part and denied in part. The Court stays this case pending the Illinois Appellate Court's decisions in *Tims v. Black Horse Carriers*, App. No. 1-20-0563 and *Marion v. Ring Container Techs., LLC*, App. No. 3-20-0184 and pending the Seventh Circuit's

---

[5]As *Vivid Seats* points out, at least two other judges in this District granted stays while *McDonald* was pending before the Illinois Appellate Court. *Bell*, 20-cv-3181, Dkt. 22; *Treadwell*, 18-cv-8212, Dkt. 120. Since *Bell* and *Treadwell* were stayed, the Illinois Appellate Court issued its decision in *McDonald*, unanimously holding against IWCA preemption. Both courts have continued the stays since the Illinois Appellate Court issued its decision; however, this Court granted a continuance of the stay in *Treadwell* at the parties' request because they are engaged in settlement negotiations, not because of the pending Illinois Supreme Court decision on the petition for leave to appeal. 18-cv-8212, Dkt. 125, 126.

5

decision in *In Re: White Castle Sys., Inc.*, No. 20-8029. The parties are to file a status report by February 15, 2021 to update the Court on the status of these cases. Vivid Seats' Motion to Dismiss [30] is denied without prejudice with leave to refile once the stay is lifted.

Date:  12/15/2020

United States District Judge
Franklin U. Valderrama

6