IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JENORA KYLES, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | |
| | ) | Case No. 21 C 5069 |
| Plaintiff, | ) ) | |
| v. | ) ) | Judge Jorge L. Alonso |
| CERNER CORPORATION and IMPRIVATA, INC., | ) ) ) | |
| Defendants. | ) ) | |

## ORDER

Defendant Cerner Corporation's motion to dismiss [41] and defendant Imprivata, Inc.'s motion to dismiss [43] are denied. Plaintiff's motion to remand [48] is granted as to the claim brought pursuant to 740 ILCS 14/15(a). The Court severs the section 15(a) claim and remands it to state court. A status hearing is set for 10/27/22.

## STATEMENT

Plaintiff Jenora Kyles brings this suit against defendants Cerner Corporation ("Cerner") and Imprivata, Inc. ("Imprivata"), claiming that they violated plaintiff's rights under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). Plaintiff asserts that defendants violated the statute by collecting, obtaining, and/or storing biometric information, without obtaining informed consent or a written release, and by failing to make public a written schedule for retention and destruction of biometric information. *See* 740 ILCS 14/15(a)-(b). Plaintiff initially filed this suit against Cerner in the Circuit Court of Cook County, Illinois, and Cerner removed the case to this Court. Plaintiff later amended her complaint to join Imprivata as a defendant.

Three motions are now before the Court: Cerner and Imprivata's separate motions to dismiss the amended complaint for failure to state a claim, and plaintiff's motion to sever and remand the claim asserted under BIPA section 15(a). Based on statements in plaintiff's motion about the scope of her section 15(a) claim, defendants consent to severing and remanding that claim.[1] Plaintiff's motion is therefore granted, leaving only the motions to dismiss.

## I. Background

Cerner, a supplier of health information technology services and devices, markets a product known as the RxStation, an "automated medication dispensing cabinet with security features integrated with Imprivata's biometrically enabled finger scanning technology." (Am. Compl. ¶ 17.) Plaintiff, an Illinois resident and citizen, worked as a nurse at Shirley Ryan AbilityLab ("Shirley Ryan"), formerly known as the Rehabilitation Institute of Chicago, until September 2018. While employed at Shirley Ryan, she was required to "register her fingerprint with Defendants' registration laptop to access the RxStation," and then to "provide scans of her fingerprint to Defendants each time she needed to access the RxStation." (*Id.* ¶ 24; *see id.* ¶ 18-19.)

Plaintiff alleges that the "RxStation as well as the Imprivata biometric technology are connected to Defendants' networks, servers, or other hosted environments," and, "by obtaining users' biometrics through the Imprivata laptop and RxStation registration process, Defendants collect, capture, and transmit biometric data, in some format, to be stored and maintained in their

---

[1] In moving to sever and remand the section 15(a) claim for lack of standing, plaintiff states that she seeks relief under section 15(a) solely for failing to "'make publicly available a written biometric retention and destruction schedule,'" and she does not claim to have suffered a "'personalized injury'" arising under section 15(a). (Notice of Consent to Severance and Remand, ECF No. 58 (quoting Mot. to Remand at 2, ECF No. 48).) Defendants "[a]ccordingly" consent to severance and remand of that claim. (*Id.*)

servers." (*Id.* ¶ 20.) Accordingly, defendants "collect[ed] Plaintiff's biometrics" and "transmitted information derived from the scanning of Plaintiff's biometric identifier[s], *i.e.* biometric information, to Defendants' own servers or hosted environments." (*Id.* ¶ 26.) However, defendants "never sought or obtained Plaintiff's consent" and they never informed Plaintiff in writing that her "biometrics were being captured, collected, stored, and/or used." (*Id.* ¶ 26-27.)

II.  **Applicable Law and Legal Standards**

Defendants have moved to dismiss the complaint pursuant to Rule 12(b)(6). "A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alteration marks omitted). Under federal notice-pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* Stated differently, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "In reviewing the sufficiency of a complaint under the plausibility standard, [courts must] accept the well-pleaded facts in the complaint as true, but [they] 'need[ ] not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements.'" *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th Cir. 2013) (quoting *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009)).

BIPA imposes certain restrictions on how "private entit[ies]" may collect, retain, use, disclose, and destroy "biometric identifiers" and "biometric information." *See* 740 ILCS 14/15. "Biometric identifier" generally means "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry," apart from various enumerated exclusions. 740 ILCS 14/10. "Biometric information" refers to "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual," except for information derived from "items or procedures excluded under the definition of biometric identifiers." *Id.*

BIPA mandates that, before collecting or obtaining an individual's biometric identifiers or information, a private entity must inform the individual in writing of the fact that biometric information is being collected, 740 ILCS 14/15(b)(1); the specific purpose of collecting or using the biometric information, 740 ILCS 14/15(b)(2); and the length of time for which the biometric information will be collected, stored, and used, *id*. The entity must also obtain a signed "written release" before collecting an individual's biometric information. 740 ILCS 14/15(b)(3). Additionally, a private entity in possession of biometric information must make publicly available a "retention schedule and guidelines" it uses for permanently destroying biometric identifiers and information it has collected after a certain time period. 740 ILCS 14/15(a).

### III. Analysis

With the section 15(a) claim severed, plaintiff's claims—for failing to inform plaintiff of the fact, purpose, and time frame of the collection, use, and storage of plaintiff's biometric data—

4

arise under section 15(b). The Court takes defendants' separate motions to dismiss these claims in turn.

### A. Cerner's Motion to Dismiss

Cerner makes the following arguments in support of its motion to dismiss plaintiff's section 15(b) claims: (1) plaintiff does not allege that Cerner took an active step to collect or obtain her biometrics; (2) BIPA requires only employers, not third-party venders, to inform subjects and obtain a written release before collecting biometrics, (3) the data Cerner is alleged to have collected from plaintiff does not fall within the definition of "biometric identifier" set forth in 740 ILCS 14/10 because it was "collected, used, or stored for health care treatment, payment, or operations," and (4) plaintiff has not plausibly alleged an intentional or reckless BIPA violation, as necessary to obtain statutory damages of $5,000.

#### 1. Active Step to Collect or Obtain Data

"[C]ourts have recognized that possession of biometric data alone does not subject an entity to § 15(b)'s requirements." *Ronquillo v. Doctor's Assocs., LLC*, No. 21 C 4903, 2022 WL 1016600, at *2 (N.D. Ill. Apr. 4, 2022) (citing cases). Instead, "for § 15(b) to apply, the defendant must take *active steps* to collect, capture, or otherwise obtain the plaintiff's biometric information." *Id.* (emphasis added). Cerner argues that plaintiff does not plausibly allege that Cerner took any active steps to collect her information. According to plaintiff, Cerner did no more than supply a product that plaintiff's employer, Shirley Ryan, used to collect biometric information from plaintiff and other staff members. Given Cerner's passive role in this process, Cerner argues, it cannot be liable to plaintiff under BIPA. *See, e.g.*, *Jacobs v. Hanwha Techwin Am., Inc.*, No. 21 C 866, 2021 WL 3172967, at *3 (N.D. Ill. July 27, 2021) (customer of retailer that had installed

surveillance cameras with facial recognition capabilities did not state BIPA claim against the supplier of the cameras).

Even assuming it is correct that plaintiff must allege that defendants took some "active step"—the parties do not cite any binding case that has so held—this argument fails because plaintiff has made the requisite allegations. Plaintiff alleges that the RxStation is "connected to Defendants' networks, servers, or other hosted environments," and, "by obtaining users' biometrics through the Imprivata laptop and RxStation registration process, Defendants collect, capture, and transmit biometric data, in some format, to be stored and maintained in their servers." (Am. Compl. ¶ 20.) Additionally, plaintiff alleges that defendants "collect[ed] Plaintiff's biometrics" and "transmitted information derived from the scanning of Plaintiff's biometric identifier[s], *i.e.* biometric information, to Defendants' own servers or hosted environments." (*Id.* ¶ 26.) While allegations that a third party used a particular defendant's product to collect a plaintiff's biometric data may not suffice to state a BIPA claim by themselves, it is a different story if the defendant not only supplied a device that a third party used for the collection of biometric data, but also obtained the biometric data from the device and stored it on its own servers. *See Heard v. Becton, Dickinson & Co.*, 524 F. Supp. 3d 831, 841 (N.D. Ill. 2021) ("*Heard II*"); *cf. Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 966 (N.D. Ill. 2020) ("*Heard I*").

The Court is required to accept plaintiff's factual allegations as true in assessing whether she states a claim, and she states a claim that is facially plausible so long as a court could draw a reasonable inference in her favor. *Iqbal*, 556 U.S. at 678. In light of plaintiff's allegations about the transmission of biometric data from the RxStations to Cerner's own servers or other hosted environments, it's "reasonable to infer" that Cerner was playing an active role in capturing and obtaining plaintiff's biometric information. *King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 WL

6

5006692, at *8 (N.D. Ill. Oct. 28, 2021); *see Heard II*, 524 F. Supp. 3d at 841 ("It is entirely plausible that users' biometric information is stored on *both* the [users' employer's] servers and [the defendant's] servers."). That is not to say that the allegation is true, but plaintiff is not required to "prove the merits of [her] claims at the pleading stage," and it is at least plausible that Cerner collected her biometric information and stored it on Cerner's own servers. *Heard II*, 524 F. Supp. 3d at 841; *see Ronquillo*, 2022 WL 1016600, at *3. Therefore, plaintiff states a claim.

### 2. Duty to Inform Subjects and Obtain Written Release Applied to Cerner

Although section 15(b) nominally restricts the conduct of any "private entity," Cerner argues that, where the plaintiff's biometric data is collected at work, this provision should be interpreted to apply only to the plaintiff's employer, not contractors or venders. Section 15(b) requires collectors of biometric data to inform subjects of the fact, purpose, and time frame of collection and use, 740 ILCS 14/15(b)(1)-(2), and to obtain their "written release," 740 ILCS 14/15(b)(3). BIPA defines "written release" as "informed written consent or, *in the context of employment*, a release executed by an employee as a condition of employment." 740 ILCS 14/10 (emphasis added). According to Cerner, it would be illogical to apply these provisions to an entity like Cerner in a case such as this, where Cerner's only relationship to plaintiff is as a third-party supplier of equipment to plaintiff's employer. Cerner argues that it can hardly procure written releases, as a condition of employment, from every employee of each of its customers.

The Court does not see the difficulty that Cerner sees. Even assuming it is correct to consider Cerner to have obtained plaintiff's data "in the context of employment," even though plaintiff was not Cerner's employee, Cerner was "still a 'private entity' that [allegedly] 'collect[ed]' or 'obtain[ed]' Plaintiff[']s] data, and thus remained obligated to receive a release from [her] as a condition of [her] employment." *See Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772, 783

7

(N.D. Ill. 2020) (quoting 740 ILCS 14/15(b)) (alterations of internal quotations in original). That reading of the statute is not absurd; Cerner could have complied by requiring its customers, "as a contractual precondition" to purchasing Cerner's equipment, to "agree to obtain their employees' written consent to [Cerner] obtaining their data." *Figueroa*, 454 F. Supp. 3d at 783; *see Karling v. Samsara Inc.*, No. 22 C 295, 2022 WL 2663513, at *6 (N.D. Ill. July 11, 2022); *Ronquillo*, 2022 WL 1016600, at *3; *King*, 2021 WL 5006692, at *9. Plaintiff does not fail to state a claim merely because Cerner is not her employer.

### 3. Health Care Exclusion

BIPA defines "biometric identifier" as "a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry." 740 ILCS 14/10. However, the definition expressly excludes, among other things, "information captured from a patient in a health care setting or *information collected, used, or stored for health care treatment, payment or operations* under the federal Health Insurance Portability and Accountability Act of 1996." *Id.* (emphasis added). Cerner argues that the information it is alleged to have collected falls within this health care exclusion.

The Illinois Appellate Court twice rejected this position in *Mosby v. Ingalls Memorial Hospital*, 2022 IL App (1st) 200822, ¶¶ 33, 53-65, initially and then again after granting a petition for rehearing to consider additional arguments. *See also Vaughn v. Biomat USA, Inc.*, No. 20 C 4241, 2022 WL 4329094, at *8 (N.D. Ill. Sep. 19, 2022) (citing *Mosby*—prior to rehearing—and *Heard II*, 524 F. Supp. 3d at 845). As Cerner recognizes, this Court is not free to ignore the Illinois Appellate Court's interpretation of Illinois law unless it has good cause to believe that the Illinois Supreme Court would interpret the law differently. *See Shields Enters., Inc., v. First Chi. Corp.*, 975 F.2d 1290, 1297 (7th Cir. 1992). To demonstrate that there is good cause for that belief, Cerner merely reargues the issue, and, even if the Court found Cerner's statutory-interpretation arguments

8

convincing, it would not be inclined to depart from *Mosby* without more. Parties seeking novel interpretations of state law should "'present those claims initially in state court,'" rather than ask a federal court to break new ground. *Id.* (quoting *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987)). Cerner has not pointed to the sort of "'persuasive data' in other decisions of Illinois courts" that convinces this Court that the Illinois Supreme Court would likely reject the appellate court ruling in *Mosby*. *See Westport Ins. Corp. v. City of Waukegan*, No. 14-CV-419, 2017 WL 4046343, at *2 (N.D. Ill. Sept. 13, 2017) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)); *cf. Acuity v. Lenny Szarek, Inc.*, 128 F. Supp. 3d 1053, 1061 (N.D. Ill. 2015) (citing *Robinson v. Ada S. McKinley Cmty. Servs., Inc.*, 19 F.3d 359, 363 (7th Cir. 1994)).

### 4. Allegations of Recklessness or Intent

BIPA provides that any person "aggrieved by a violation" of BIPA may recover for each violation: (1) against a private entity that negligently violates a provision of [BIPA], liquidated damages of $1,000 or actual damages, whichever is greater; (2) against a private entity that intentionally or recklessly violates a provision of [BIPA], liquidated damages of $5,000 or actual damages, whichever is greater; (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and (4) other relief, including an injunction, as the State or federal court may deem appropriate." 740 ILCS 14/20. Cerner contends that plaintiff has not plausibly alleged an intentional or reckless BIPA violation, as necessary to obtain statutory damages of $5,000.

This argument is out of place at this stage because plaintiff is not required to plead recklessness or intent in her complaint. The Seventh Circuit has explained that "[a] motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim

9

for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 324-25 (7th Cir. 2015). Establishing recklessness or intent raises the stakes by entitling the plaintiff to a greater amount of statutory damages, but making allegations of those mental states is not necessary to state a claim for relief. In a BIPA case, "if the complaint plausibly pleads violations of Section 15(b) . . . then, even absent specific allegations about [defendants'] mental state with respect to each of those claims, it has stated a claim entitling [plaintiff] to litigation expenses and injunctive relief under Section 20, whether or not she proves an entitlement to damages based on negligent, reckless, or intentional conduct." *Cothron v. White Castle Sys., Inc.*, 467 F. Supp. 3d 604, 615 (N.D. Ill. 2020); *see Ronquillo*, 2022 WL 1016600, at *4 ("[T]he need to demonstrate negligence, intentional action, or recklessness impacts a plaintiff's recovery, not the underlying substantive BIPA violation."); *Burlinski v. Top Golf USA Inc.*, No. 19-CV-06700, 2020 WL 5253150, at *8 (N.D. Ill. Sept. 3, 2020) ("[T]o the extent that recklessness is a prerequisite for certain types of statutory *remedies*, it is premature to raise the issue at the pleading stage."); *Smith v. Signature Sys., Inc.*, No. 2021-CV-02025, 2022 WL 595707, at *5 (N.D. Ill. Feb. 28, 2022) (citing cases, including *Cothron*).

Even if plaintiff were required to plead a mental state, Cerner does not appear to dispute that, to the extent plaintiff has plausibly pleaded conduct that violates BIPA, her allegations suffice to support a reasonable inference of at least a negligent mental state. Nor *could* Cerner dispute it: several decisions have reasoned that, when a plaintiff makes allegations to support an inference that a defendant has made no efforts to comply with BIPA more than ten (now almost fifteen) years after it was enacted in 2008, she has alleged enough to "make a claim of negligence or recklessness plausible." *Rogers v. BNSF Ry. Co.*, No. 19 C 3083, 2019 WL 5635180, at *5 (N.D. Ill. Oct. 31, 2019); *see Figueroa*, 454 F. Supp. 3d at 786, *Burlinski*, 2020 WL 5253150, at *8; *Neals v. PAR Tech. Corp.*, 419 F. Supp. 3d 1088, 1092-93 (N.D. Ill. 2019). The Court agrees with

the reasoning of these decisions. Plaintiff has alleged enough to state a plausible claim for relief, and therefore to survive Cerner's Rule 12(b)(6) motion to dismiss.

### B. Imprivata's Motion to Dismiss

Imprivata argues that (1) plaintiff has not plausibly alleged that Imprivata collected or obtained her biometrics and (2) plaintiff's claims are time-barred under the two-year statute of limitations for a statutory penalty set forth in 735 ILCS 5/13-202.

#### 1. Sufficiency of Allegations to State Plausible Claim

Imprivata argues that plaintiff has not plausibly alleged that Imprivata collects or captures information that it stores or maintains on its own servers or other hosted environments. According to Imprivata, plaintiff's allegations on this point are purely conclusory and therefore do not rise above the speculative level.

This argument fails for the same reasons the Court rejected Cerner's similar argument in Part III.A.1. The *Twombly*/*Iqbal* standard requires plaintiffs to plead claims that are facially plausible; it does not require them to prove their claims at the pleading stage. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[Under Rule 8,] the plaintiff must give [only] enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen."). There must be enough factual detail to raise the pleading above the level of an "abstract recitation[] of the elements of a cause of action," *Brooks*, 578 F.3d at 581, and plaintiff has included enough factual detail about defendants' products, and how they function, to do that. Whether plaintiff's allegations are true is another matter, and they may prove to be false in the end, but as the Court explained above, plaintiff is not required to "prove the merits of [her] claims at the pleading stage." *Heard II*, 524 F. Supp. 3d at 841; *see Smith v. Signature Sys., Inc.*, No. 2021-CV-02025, 2022 WL

11

595707, at *4-5 (N.D. Ill. Feb. 28, 2022); *Ronquillo*, 2022 WL 1016600, at *3, *Karling*, 2022 WL 2663513, at *6. Plaintiff's claim that Imprivata has collected or captured and stored her biometric data meets the standard of facial plausibility.

### 2. Statute of Limitations

Imprivata argues that the applicable statute-of-limitations period is the two-year limitations period set forth in 735 ILCS 5/13-202, not the five-year period set forth in 735 ILCS 5/13-205. The Court often denies Rule 12(b)(6) motions to dismiss based on affirmative defenses, such as the statute of limitations, because plaintiffs are not required to plead around affirmative defenses; dismissal is only appropriate at the pleading stage if the plaintiff "alleges, and thus admits, the elements of the affirmative defense." *Ibarra v. Prospera, LLC*, No. 20 C 7015, 2021 WL 1921015, at *2 (N.D. Ill. May 12, 2021) (citing *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)). Imprivata asserts that plaintiff has done so here by alleging that plaintiff worked at Shirley Ryan only "until September 2018," more than two years prior to the filing of this suit in 2021.

The most glaring obstacle to this argument is the Illinois Appellate Court's recent decision in *Tims v. v. Black Horse Carriers, Inc.*, 184 N.E.3d 466, 473 (Ill. App. Ct. 2021), *appeal allowed,* 184 N.E.3d 1029 (Ill. 2022), in which the court expressly stated, "We . . . find that . . . section 13-205 governs actions under sections 15(a), (b), and (e) of the [Biometric Information Privacy] Act." As the Court explained above in Part III.A.3, plaintiff faces an uphill climb in convincing this Court to depart from an Illinois Appellate Court decision, and it must do more than simply reargue an issue of statutory interpretation that the Illinois Appellate Court has already decided. While it is true that the Illinois Supreme Court has allowed a petition for leave to appeal

in *Tims*, that fact, by itself, is not sufficient data to persuade the Court to depart from the Illinois Appellate Court's decision on this particular issue.

Imprivata argues that the Court need not adhere to *Tims* because *Tims* did not address the argument Imprivata makes in this case, namely, that the two-year limitations period applies to this case because the statutory damages plaintiff seeks are a "statutory penalty" within the meaning of that term as used in 735 ILCS 5/13-202. In *Tims*, the court considered a certified question: "whether the limitation period in section 13-201 or section 13-205 of the Code of Civil Procedure (Code) applies to claims under the [BIPA]." 184 N.E.3d at 468. 735 ILCS 13-201 sets forth a one-year limitations period for actions for defamation or "violating the right of privacy," whereas 735 ILCS 5/13-205 sets forth a five-year limitations period for certain enumerated contract or property-based actions as well as "all civil actions not otherwise provided for." Imprivata argues that the *Tims* court answered the narrow question presented and chose between these two alternatives, without considering whether another statute of limitations might apply.

The Court finds the express language of *Tims* hard to ignore: the decision expressly states that "section 13-205 governs actions under section 15(a), (b), and (e)" of BIPA. 184 N.E.3d at 473. And even if the Court were inclined to discount the Illinois Appellate Court's express statement of its holding, it is not convinced to rule in Imprivata's favor at this stage. Despite the proliferation of BIPA litigation in recent years, Imprivata cites no decisions that have taken its position on this issue, and some trial-level decisions have rejected it. *See, e.g., Burlinski*, 2020 WL 5253150, at *7; *Meegan v. NFI Indus., Inc.*, No. 20 C 465, 2020 WL 3000281, at *4 (N.D. Ill. June 4, 2020).

Particularly persuasive in this regard is *Robertson v. Hostmark Hospitality Group, Inc.*, No. 18-CH-5194, 2019 WL 8640568, at *3-4 (Ill. Cir. Ct. July 31, 2019). In *Robertson,* the court explained that a statute is penal—and therefore imposes a statutory penalty—if it "'(1) impose[s]

13

automatic liability for a violation of its terms; (2) set[s] forth a predetermined amount of damages; and (3) impose[s] damages without regard to the actual damages suffered by the plaintiff.'" *Id.* (quoting *Landis v. Marc Realty, L.L.C.*, 919 N.E.2d 300, 307 (Ill. 2009)). The court explained that, in *Standard Mutual Insurance Co. v. Lay*, 989 N.E.2d 591, 599 (Ill. 2013), the Illinois Supreme Court rejected the argument that the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, is penal (albeit in the context of insurance coverage, not in the context of 735 ILCS 5/13-202), despite the fact that it imposes statutory liquidated damages. The *Lay* court ruled that the TCPA was "'clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils.'" *Lay*, 989 N.E.2d at 600 (quoting *Scott v. Ass'n for Childbirth at Home, Int'l*, 430 N.E.2d 1012, 1017 (Ill. 1981)). The liquidated damages were not a penalty, but, "at least in part, an incentive for private parties to enforce the statute." *Lay*, 989 N.E.2d at 600. In *Robertson*, the court reasoned that BIPA is similar to the TCPA in this regard, and the statutory damages BIPA makes available should similarly be viewed not as a statutory penalty but as part of a remedial scheme. 2019 WL 8640568, at *3-4. In the absence of precedential decisions pointing in a different direction, the Court agrees with *Robertson*'s reasoning and concludes that BIPA does not impose a statutory penalty within the meaning of 735 ILCS 5/13-202.

      For the foregoing reasons, the Court denies defendants' motions to dismiss.

**SO ORDERED.**                                     **ENTERED: October 18, 2022**

                                                                         _____
                                                                         **HON. JORGE ALONSO**
                                                                         **United States District Judge**